## DEERING HARVESTER CO. v. WHITMAN & BARNES MFG. CO.

(Circuit Court of Appeals, Sixth Circuit. December 19, 1898.)

No. 580.

1. TRADE-MARKS—HOW CREATED—PURPOSE OF DESIGNATION.
    To constitute a trade-mark, the mark or symbol used must be designed, as its primary purpose, to distinguish each of the articles to which it is affixed from like articles produced by others. If it is originally adopted for some other purpose, such as to designate the size, shape, and capacity

of the article, so that any office it may perform as a designation of origin is merely incidental, no trade-mark right is acquired.

2. SAME.

In machines, such as reapers and mowers, which have many detachable parts, subject to be worn out or broken, the stamping or casting of letters and figures thereon, merely for the purpose of distinguishing them from each other, so that the user of the machine may more readily order them by letter or telegraph for purposes of replacement or repair, creates no trade-mark rights in such letters or figures; nor is it sufficient to justify their appropriation as trade-marks that they are found only in association with the machines of the particular manufacturer.   86 Fed. 764, affirmed.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

This is a bill to restrain the defendants from using a multitude of alleged trade-marks first adopted and used by complainant. The defense was that the letters and numerals so adopted and used were not adopted or used as trade-marks, and did not serve the purpose of trade-marks, but were definitions of things, and had no significance in designating the origin or manufacturer of the parts so identified. The defense, upon the pleadings and evidence, was sustained, and the bill dismissed. The evidence shows that complainants are manufacturers of reapers, mowers, and other harvesting machinery, and the separate parts thereof. Such machines are composed of many separate and detachable parts, all of which are subject to injury by use, and liable to breakage or loss. Many styles of the same machine are also made. These separate or severable parts thus liable to breakage or loss are known in the trade as "extras" or "repairs." To enable the user of the machine to supply himself with such extras or repairs, a system of stamping upon the cast parts a letter designating the style of the machine, followed by a numeral designating the particular repair or part, has been adopted and used by complainant, as well as by other makers of like machinery. Thus, it appears that complainant is constantly changing the style of each of the machines made by it. Each style, as developed, is given a letter, and is catalogued as reaper or mower "A," or "B," or "C," as the case may be. The parts liable to loss or breakage, and capable of substitution by an extra, have stamped on them the letter indicating style of machine, followed by a number, as "F 13," or "B 401." A user would have great difficulty in describing the precise size and part for which he wishes a substitute, and might be obliged, to avoid mistake, to send or take his machine or the broken part to a dealer or maker for the purpose of securing with certainty the particular piece he needed to supply. The very many styles of each machine, and the multitude of parts in each, would make the prompt and sure supply of an extra part most uncertain, if each user was left to his own ingenuity in prescribing the precise thing he needed. The same difficulty, though in less degree, was found to exist in the shop of the manufacturers, with the employés, and in the case of a constructor of machines who bought some of the parts from manufacturers. Some easy, simple, and sure way of indicating briefly the size, shape, and adaptation of the piece needed was necessary. The plan of doing this by letters followed by numerals cast on the part was fallen upon by manufacturers of such machines, and also by makers of other machinery where the frequent necessity of replacing broken or worn parts existed. The selection of a letter to indicate the style is, of course, arbitrary in the first instance, inasmuch as one letter would as well serve to define the shape and size and pattern as another. But, when once selected, it is, of course, necessary that the same letter shall always be used to mark the same pattern. So with the numerals designating the particular part. The same number must always designate a particular part or piece in a machine of a particular style or pattern.

The appellee is a large manufacturer of machinery of many kinds, and of the separate parts or pieces needed to supply repairs to machines made by itself or others. There was a time when the complainant or its predecessor did not make all the parts of the harvesting machinery constructed by them.

Many such parts were made by appellees on their order, and then there grew up a necessity for some arbitrary method of describing the particular part needed for the different machines and styles of machines made by appellant. This was met by the plan now and ever since used by appellant. Before the appellant began to make all the parts of its numerous and complicated structure, it was accustomed to send a pattern to defendants, or otherwise describe the thing needed, and direct that the cast parts should be designated in the manner now used. Subsequent orders would be made by the letter and numeral cast on the part. The appellee, as the proof shows, was accustomed then, as now, to supply all who needed such parts; they not being within the monopoly of any patent. The making and sale of such extras adapted for use in machines made by the appellant and others have been conducted openly, frankly, and under claim that such commerce was open and free. They advertise by catalogue that the parts so offered for sale are of their own manufacture, and evidently regard that fact as giving the goods a standing in the market superior to that held by like articles made by others. These repairs and extra parts are advertised and catalogued as parts made by them, adapted to be used in the Deering machines, and interchangeable with corresponding parts furnished by the original manufacturers of said machines.

Thomas & Ephraim Banning, for appellant.
Robert H. Parkinson, for appellee.

Before TAFT and LURTON, Circuit Judges, and CLARK, District Judge.

LURTON, Circuit Judge, having made the foregoing statement of the facts, delivered the opinion of the court.

The evidence makes it clear that the system of using letters and numerals upon the parts composing the structures made and sold by the Deering Harvester Company and their predecessors in business was originally adopted and used with no other purpose than to conveniently designate the size, shape, and capacity of the article, and to distinguish it from other parts, sizes, shapes, and adaptability, and with no intention or expectation to thereby indicate its origin or manufacture. That such mark or symbol must be designed, as its primary object and purpose, to distinguish each of the articles to which it is affixed from like articles produced by others, seems to be the clear consensus of all the cases which are authoritative. Canal Co. v. Clark, 13 Wall. 311; Manufacturing Co. v. Trainer, 101 U. S. 54; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396; Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151. This result would seem to be evident from the accepted definition of a trade-mark. In Canal Co. v. Clark, 13 Wall. 311, 322, it was said that:

"The office of a trade-mark is to point out distinctly the origin or ownership of the article to which it is affixed, or, in other words, to give notice who was the producer."

In the case of Manufacturing Co. v. Spear, 2 Sandf. 599,—a case frequently approved for its clear and satisfactory presentation of the philosophy of trade-mark law,—it was said:

"The owner of an original trade-mark has an undoubted right to be protected in the exclusive use of all the marks, forms, and symbols that were appropriated as designating the true origin or ownership of the article or fabric to which they are affixed; but he has no right to the exclusive use of any words, letters, or figures or symbols which have no relation to the origin

or ownership of the goods, but are only meant to indicate their names or quality. He has no right to appropriate a name or a symbol which, from the nature of the fact it is used to signify, others may employ with equal truth, and, therefore, have an equal right to employ for the same purpose."

That the primary design and object in adopting a word, letter, numeral, or symbol shall be for the purpose of pointing out the origin of the thing to which it is affixed, is most clearly decided in several leading cases, wherein it appeared that certain ordinary signs or letters had been primarily adopted for the purpose of designating a quality of the article, and not for the purpose of signifying origin. Thus, in Manufacturing Co. v. Trainer, 101 U. S. 51, which was but a sequel to the case of Manufacturing Co. v. Spear, cited above, the letters "A. C. A." were originally designed to designate the quality of certain cotton goods manufactured by the manufacturing company, and which were afterwards used by the defendant for the same purpose. The contention of the complainants in that case, as in the one before us, was that these letters had been also appropriated to the exclusive use of complainants as a trade-mark. The court held, however, that the design and object in using these letters was to indicate quality, and that "a right to the exclusive use of words, letters, or symbols to indicate merely the quality of the goods to which they are affixed cannot be acquired." In Lawrence Mfg. Co. v. Tennessee Mfg. Co., supra, the question was as to whether the use of the letters "L. L.," affixed upon cotton sheeting, constituted a trade-mark. The court held that these letters were used principally to indicate a quality, and not the origin, and were not, therefore, a trade-mark. Touching the distinction upon which that case was made to turn, the court said:

"Nothing is better settled than that an exclusive right to the use of words, letters, or symbols, to indicate merely the quality of the goods to which they are affixed, cannot be acquired. And while, if the primary object of the mark be to indicate origin or ownership, the mere fact that the article has obtained such a wide sale that it has also become indicative of quality is not of itself sufficient to debar the owner from protection, and make it the common property of the trade (Burton v. Stratton, 12 Fed. 696), yet if the device or symbol was not adopted for the purpose of indicating origin, manufacture, or ownership, but was placed upon the article to denote class, grade, style, or quality, it cannot be upheld as technically a trade-mark."

The object and purpose in using the marks here involved are very clearly and fairly stated by the counsel for appellant, who in their brief say:

"In the manufacture of reaping and mowing machines, there are a great many parts which are subject to breakage, or which wear out before the main parts of the machine, so that they need to be replaced by the farmer using the machine. It is necessary that these parts be made of a size and shape that will permit the user to take out a broken or wornout part, and replace it with another which will fit into the machine and take its place. These parts, for convenience, are usually termed 'extras' or 'repairs' in the trade. To enable the user to order a part broken or worn out from the manufacturer or agent from whom he purchased the machine, or other dealer, it is necessary that such part should be identified or designated by a special mark in some way made intelligible to the users, manufacturers, and dealers. These parts are often ordered by telegraph, as a part is liable to be broken or worn out in the midst of the harvest season, when it is important that it should be replaced with as much expedition as possible. Hence the necessity of giving to each

a special mark, by which they are known both by the seller and the purchaser."

It is, of course, no fatal objection to the validity of a trade-mark that it does not include the name of the manufacturer or producer. The sign, symbol, or mark may be purely fanciful, and convey no information as to the name of the producer. But the essential thing is that it shall be designed and used to indicate the origin of the article, and that all articles having the same mark come from a common source. But this is not the purpose of the letters and numerals affixed by appellants. The claim that, inasmuch as these marks are found only in "association" with machines which do bear the trade name or mark, or both, of the Deering Harvester Company, they thereby serve to indicate that company as the common source of all articles having a like designation, is not sufficient to justify their appropriation as trade-marks. Any office which these marks perform as designations of origin is purely accidental. The fact that no two distinct parts in the same machine bear the same numerals is altogether persuasive of the fact that their purpose is not that of indicating the producer. Without explanation, such a multitude of different marks would convey no meaning. When explained, as they always have been and always must be, the explanation is that they are intended to designate size, shape, and place in the machine, and are to be used to distinguish one piece or part from another having a different function. This purpose does not tend, in any but the most remote way, to indicate the producer or maker. If each of such parts had some common symbol, in addition to the varying marks indicating place and size and shape, we would have marks capable of the double duty claimed for those actually used. The system of so defining the place, size, and shape of a part of a machine is not original with appellants. It is common to many other manufacturers. The purpose is to facilitate replacements. If they may also be appropriated as trade-marks, it will operate to practically monopolize all repairs and replacements by the original maker of the machines. The question is, therefore, one of wide general interest. If complainant's contention is well founded, it will injure the public, by stifling competition in the manufacture and sale of such repairs and replacements by confining their production to the original producer. The necessity for a common designation for such parts of such machines, by whomsoever the part is made, is most apparent, upon the showing made by the appellant.

Neither does the evidence justify any relief upon the ground of unfair trade. The appellees have affixed to the parts made by them for use in Deering machines the same letters and numerals as those affixed upon the same parts by the Deering Company. This they have a right to do. These parts are open to the manufacture of all. The letters and numerals affixed, being only for the purpose of defining kind, shape, size, and place, may be rightly used by any one for the same purpose. These parts made by appellees have been plainly advertised by catalogue and label as of their own manufacture, and their whole course of dealing, as shown by this evidence, has been such as to mislead no one into buying their product as that of appellants. Decree affirmed.