## VACUUM OIL CO. v. CLIMAX REFINING CO.

(Circuit Court of Appeals, Sixth Circuit. February 3, 1903.)

### No. 1,115.

**1. TRADE-MARKS—NUMBERS OR LETTERS DENOTING QUALITY.**

After the number "600" had long been used by manufacturers in marking barrels containing petroleum cylinder oil, to indicate quality, by denoting the number of degrees of heat at which it had been subjected to fire test, and various letters had been used in connection with it to indicate other qualities or grades or special uses, one manufacturer could not appropriate the symbol "600W" to his exclusive use as a trade-mark, so as to exclude other manufacturers from using such numbers, either alone, or in combination with other letters of the alphabet.

**2. SAME—UNFAIR COMPETITION.**

Evidence examined, and *held* not to sustain a charge of unfair competition in simulating complainant's marks or brands used on barrels of lubricating oil.

Appeal from the Circuit Court of the United States for the Northern District of Ohio.

This is a bill to restrain infringement of an alleged trade-mark, and also to restrain unfair competition. The trade-mark claimed consists of the figures and letter "600W," in connection with the sale of cylinder oil, and branded upon the barrel heads in which such oil is sold. The defendant is charged with infringing by using in connection with the sale of its cylinder oil the character "600V." The charge of unfair competition is based on the claim that complainant's oil has become widely and favorably known as "600W," and that the use by defendant of the symbol "600V" in connection with the sale of its oil is calculated to mislead and deceive the public into the purchase of the defendant's oil as and for the oil made and sold by complainant. District Judge Wing, upon the pleadings and evidence, dismissed the bill.

C. S. Davis, for appellant.

F. A. Quail, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

Oils adapted for use in the cylinder of an engine as a lubricator must be capable of enduring a high degree of heat without burning or injury to their lubricating qualities. As lubricating oils having as a base petroleum came into use in competition with animal fat oils, so long exclusively used, it became important to assure the consumers of the safety of the new lubricator at a high degree of heat.

¶ 2. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

It was found that a high grade of such oil ought to be able to endure 600 deg. of heat without taking fire from a flame brought into close contact. This led to the general adoption of 600 deg. as a proper test for a high grade of cylinder oil, and packages of oil which would stand that test, or higher, were accordingly branded with the figures "600," sometimes with and sometimes without the degree sign; the figures being understood to indicate the fire test of the oil, whether the degree sign was added or not. The weight of the evidence shows that the figures "600," in connection with the sale of cylinder oil, had come to have this significance to the trade, and to makers of such oils, long before the complainant adopted "600" as a part of its private trade-mark. The evidence also shows that in the oil business it was also customary to indicate other qualities or grades or special uses of cylinder oil by one or the other of the letters of the alphabet, used in association with the figures showing the fire test. Thus the symbol "600V," which the defendants now use, was a not uncommon description stenciled on the head of barrels containing cylinder oil; the "V" being an abbreviation of valve. There is satisfactory evidence that these methods of describing the oil included many other letters of the alphabet, including the letter "W," associated with "600." This method of describing the test and grade or use of cylinder oil began before complainants appropriated "600W" as its exclusive brand, and has continued to find favor among some of the manufacturers and dealers ever since. Complainant claims to have adopted this symbol as a trade-mark indicating origin and ownership as far back as 1879. It is not clear that this early use of these well-understood methods of describing the quality or grade of the oil made or sold by it was not descriptive, as in the case of others. Not until 1886 did it undertake to register "600W" as a private trade-mark. But if we assume that its first use of "600W" was as a symbol indicating origin of manufacture, and not quality or grade, it is still confronted with the fact that, when it attempted to appropriate "600W" as its exclusive trade-mark, its competitors and rivals were using "600V" and "600," in combination with other letters of the alphabet, as symbols well understood in the trade, signifying quality or grade, and therefore descriptive of the cylinder oil so branded. Under such circumstances, the complainant cannot appropriate to its exclusive use, as a trade-mark, signs or symbols which had come to have well-known significance in the oil trade as indicative of quality or grade. These signs or symbols were public property. Every one had a right to use them to signify the same things. To permit them to be withdrawn from public use, and to be appropriated to the exclusive use of the complainant company, as signifying origin of manufacture, would give a most unjust monopoly, calculated to greatly injure others, by creating the popular belief that oils so branded were the product exclusively of the complainant's factory. The principles preventing such an appropriation of words or signs or symbols having a popular and primary signification from becoming a technical trade-mark are well settled. Deering Harvester Co. v. Whitman & Barnes Co., 33 C. C. A. 558, 91 Fed. 376; Computing Scale Co. v. Standard Scale Co. (decided

by this court Nov., 1902, and not yet officially reported) 118 Fed. 965; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997.

That a descriptive word or sign or symbol, descriptive from popular use in a descriptive sense, may acquire a secondary significance denoting origin or ownership, is true. But this secondary significance is not protected as a trade-mark, for a descriptive word is not the subject of a valid trade-mark; the only office of a trade-mark being to indicate origin or ownership. When a descriptive or geographical word or symbol comes by adoption to have a secondary meaning denoting origin, its use in this secondary sense may be restrained, if it amounts to unfair competition. In such case, if the use of it by another be for the purpose of palming off the goods of one as and for the goods of another, a court of equity will interfere for the purpose of preventing such a fraud. But this kind of relief depends upon the facts of each case, and does not at all come under the rules applicable to the infringement of a trade-mark. We have lately had to deal with this question, and need not again go over the distinction. Computing Scale Co. v. Standard Scale Co., cited above; Elgin Watch Co. v. Illinois Watch Co., 179 U. S. 665, 679, 21 Sup. Ct. 270, 45 L. Ed. 365.

The complainant has not made a case of unfair competition. The defendant company is not a maker of the cylinder oil which it sells, but buys from a well-known manufacturer a grade of cylinder oil which it sells in barrels, having stenciled on the barrel heads the symbol "600V." This oil is of high grade, and dealers put it on the market under their own brands or names, retaining the mark "600V" as a guaranty of quality, and as a descriptive symbol. The defendant company stencils the word "Climax" over "600V," and the words "Cylinder Oil" below. The lettering is black. The complainant, on the other hand, makes its barrels with a parti-colored circle on the barrel head, within which, in parti-colored letters, is the marking "Vacuum Oil Co. No. ———600W Cylinder Oil, Rochester, U. S. A." The simplest examination shows that defendant has made no effort to simulate the general marking of barrels used by complainant. It is difficult to see how a purchaser of average observation can be deceived into mistaking one of defendant's packages for one marked and sold by the complainant.

The decree below must be affirmed.