# ROCKY MOUNTAIN BELL TELEPHONE CO. v. UTAH INDEPENDENT TELEPHONE CO. et al.

No. 1775. Decided December 19, 1906 (88 Pac. 26).

1. TRADE-MARKS AND TRADE-NAMES—UNFAIR COMPETITION—WHAT CONSTITUTES. The adoption by a telephone company of the same number as a call for its Trouble Department as that used by a rival company previously established for its Trouble Department, enabling the newer company to learn through mistakes of subscribers of the older company of cases of trouble in the use of its telephones, was not unfair competition against which an injunction would issue.

2. SAME — NATURE OF TRADE-MARKS AND TRADE-NAMES — TELEPHONE CALL. The number 888 used by a telephone company as a call for its Trouble Department is not a trade-mark or trade-name so as to deprive another company, subsequently organized, of the right of using the same number as the call for its Trouble Department.

APPEAL from District Court, Third District; C. W. Morse, Judge.

Action by the Rocky Mountain Bell Telephone Company against the Utah Independent Telephone Company and another. From a judgment in favor of defendants, plaintiff appeals.

AFFIRMED.

Geo. Y. Wallace, Jr., for appellants.

Henderson, Pierce, Critchlow & Barrette for respondent.

## RESPONDENT'S POINTS.

Excepting cases of conspiracy to injure, annoy or oppress another, the motive by which an act, in itself not unlawful, is prompted, is immaterial. No matter how malicious one may be in the doing of an act, no matter if a desire to injure or annoy another be the only motive prompting the act, if the thing done be within the legal rights of the party acting, no cause of action arises. Courts do not sit to enforce the golden rule. Illustrations of this will occur to any one from observation. (Phelps v. Nowlen, 72 N. Y. 39; Hague v. Wheeler [Penn.], 22 L. R. A. 147; Clinton v. Myers, 46 N. Y. 520; Mahan v. Brown, 13 Wend. 261; Sutherland on Damages [3 Ed.], sec 3.) Where the public is not likely to be misled and a casual inspection is sufficient to distinguish there is no ground for complaint. (Tolcote v. Moore, 6 Hun 106; Lawrence Mfg. Co. v. Lowell Co., 37 Am. Rep. 365; Gilman v. Hunnewell, 122 Mass. 148; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 551.) As a general proposition there can be no exclusive right acquired in those things which are the common property of mankind, such as the numerals, the letters of the alphabet, the common abbreviations, etc. (Avery v. Mickle, 37 Am. Rep. 365; Candee, Swan & Co. v. Deere & Co., 5 Am. Rep. 143; Lawrence Mfg. Co. v. Lowell Co., 37 Am. Rep. 364; Amoskeag Mfg. Co. v.

*Trainer,* 101 U. S. 51; *Gilman v. Hunnewell,* 122 Mass. 148.)

"It is invariably held that the essence of wrong consists in the sale of the goods of one manufacturer or vendor as those of another; and it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief." (*Canal Co. v. Clark,* 13 Wall. 311; *Denison Mfg. Co. v. Thomas Mfg. Co.,* 94 Fed. 659; *Watch Case Co. v. Watch Co.,* 94 Fed. 870.)

There are many instances of damage without legal injury. *Damnum absque injuria.* (*Lamb v. Stone,* 11 Pick. 531; 8 Am. & Eng. Ency. Law; Broom's Legal Maxims, 196; 1 Suth. on Damages [3 Ed.], sec. 3; 1 Jaggard on Torts, 86, 145; 2 Wood on Nuisance [3 Ed.], sec. 880.)

There can be no damage from the exercise of a common right. (*Steamship Co. v. McGregor & Co.,* 21 Q. B. Div. 598; *Chemical Co. v. Meyer,* 139 U. S. 540; *Denison Mfg. Co. v. Thomas Mfg. Co.,* 94 Fed. 659.)

FRICK, J.

This is an action for equitable relief by injunction. The material allegations contained in the complaint in condensed form are, in substance, as follows: That the plaintiff (hereafter designated appellant) is a corporation, and for many years last past has been established in, and conducting a public telephone business in, Salt Lake City, Utah, with about six thousand subscribers using its telephone and exchange system. That during all of said years appellant had established and maintained for its own, and for the convenience of its patrons, certain departments, one of which is known and designated as "Trouble Department," and the telephone number for said department is 888. That said Trouble Department, with said number, was established and was used, and is used, for the purpose of making it possible and convenient for the patrons of appellant to notify it of any trouble or imperfections that may arise or occur in operating the telephones used by such patrons, with a view of having the same put in order when they become defective or out of order.

That the number 888, connecting said department as aforesaid, became well known to its patrons, all of whom were accustomed to call said number whenever their telephones failed to work properly. That defendant company (hereafter called respondent), some years after appellant had established its telephone system, also established a public telephone system and exchange in Salt Lake City, with subscribing patrons using the same. That respondent well knowing the long and extensive use by appellant of its telephone having the number 888, as being the telephone number connecting its trouble department, with the intent to interfere with and of appropriating appellant's business, and of injuring said business, and with the intent to deceive appellant's patrons and the public, adopted the name "Trouble Clerk" for the same department of its business, and also adopted the number 888 for the number of the telephone used in connecting its trouble department and designated as "Trouble Clerk." That the name "Trouble Department" designated by said number 888, and the telephone connecting the same with the telephones used by its patrons, were published by appellant in its directory used by its patrons covering its telephone system, for their own and for public use. That therefore, and by the means aforesaid, the respondent acquires, and will continue to acquire, knowledge of applications made to appellant to correct defects in its telephones, and, in consequence of such information, unintentionally communicated by parties and so fraudulently secured by respondent, the respondent proceeds to send solicitors, and uses other means by which it fraudulently and surreptitiously secures the said patrons to subscribe to respondent's telephones, contrary to their wishes and intentions, when seeking to communicate with appellant. That patrons of appellant make mistakes by calling respondent's number 888, instead of appellant's number 888, and thereby annoyance and great, lasting, and irreparable damage ensues to appellant. That the instruments and telephones in use by both appellant and respondent are so much alike in appearance that the public are liable to be and are deceived, and

are unable, without special inspection, to distinguish said instruments, so used by both parties. That the respondent threatens to, and will, unless restrained, continue to use the said number 888 for the purposes alleged, and will wrongfully continue to divert appellant's business, as stated, and will fraudulently and surreptitiously continue to unlawfully inquire into and obtain information of, and interfere with, appellant's said business with its patrons, to appellant's great and irreparable damage. We have omitted the allegations in respect to the other respondent, Elmer B. Jones, the general manager of respondent, for the reason that none of them are deemed material for the purposes of this decision. The respondent interposed a demurrer to this complaint, which was overruled, whereupon respondent answered the same. When the issues joined by the complaint and answer came on for trial, the respondent interposed an objection to the introduction of any evidence in support of the allegations of the complaint, upon the ground that the same does not state facts sufficient to constitute a cause of action; in other words, a demurrer ore tenus was interposed by respondent, which was by the court sustained, and judgment dismissing the case was duly entered, from which this appeal is taken.

The only error assigned is the ruling of the court in sustaining the objection to the introduction of any evidence in support of the allegations of the complaint and in dismissing the action. Did the court err in this respect? In view of the foreging proceedings the answer of the respondent becomes immaterial, and the question to be determined arises solely upon the allegations of the complaint. The demurrer ore tenus admits all the facts well pleaded. Taking the facts, therefore, as admitted, does the complaint state a cause of action entitling appellant to the relief prayed for, or to any relief? While the action is novel and original in what is sought, the principles upon which counsel for appellant attempt to rest the case are not only old in themselves, but well established. The only question, therefore, is: Do the facts alleged bring the case within any of these principles?

The gravamen of the complaint, as we view it, consists in the adoption by respondent of the numerals 888, or in the adoption rather of that number for its telephone connecting its trouble department designated as "Trouble Clerk," with the telephones used by its subscribers and patrons after the appellant had for years prior thereto adopted and used that number for the same purpose. It is quite true that the appellant alleges that the adoption of the number, by respondent, was and is frauduent, surreptitious, and done for the purpose of obtaining knowledge and information, and then using the same to induce the patrons of appellant to subscribe for and use the telephones of the respondent, instead of those of the appellant, to its injury and damage. There is no direct allegation that the respondent made the numbers in imitation of those used by appellant or that there is any deceit or misrepresentation practiced in their use, except for the purpose aforesaid. The use and the manner thereof being clearly stated, the mere allegations of fraudulent and surreptitious conduct, as alleged, must, of course, be considered in the light of all the other facts alleged. We take it, these allegations, when made in connection with, or of characterizing some legal right, are not alone sufficient, in all cases, to authorize relief, where it otherwise appears that these terms are used only to give color to statements which, without them, would be entirely insufficient. In other words, if the respondent had a legal right to adopt and use the numerals 888 in connection with its telephone, connecting its so-called "Trouble Department" with the telephones used by its patrons, then the allegations above referred to are of little, if any, legal significance. In this connection, it is of some importance that the appellant does not claim that the respondent had not a perfect legal as well as moral right to establish a telephone system, to organize it into departments suitable to its needs, and to designate such departments by any name it saw fit. Neither is it claimed that respondent had not the right to connect with the telephones used by its patrons and the public, and to use any numerals or numbers it saw fit for that purpose, except, it is claimed, that it had not the

right to use the number 888 in connecting its "Trouble Clerk" for the same purpose that appellant used that number. Indeed, there is no claim, and none such would be tenable if made, that respondent did not have the right to use the figure 8 in any form or combination, except in the combination as the same was adopted and used by appellant, to wit, the combination "888," and then only when used in connection with that particular department. Is the distinction legally sustainable? We are not unmindful of the allegations of surreption and fraud, nor of those which allege a benefit to respondent and a detriment and annoyance to appellant arising out of the use made by respondent of the number 888. Of course, if the respondent had a legal right to adopt and use that number in connection with its "Trouble Clerk," then the motive it had in view in so doing is wholly immaterial from a legal standpoint. Nor would incidental injury or annoyance from that source be of any legal significance, if they were the resultant of a legal right. These principles are sufficiently illustrated by the following cases. While these authorities are not directed to the precise point in question in the case at bar, they, to some extent at least, are analogous. (*Phelps v. Nowlen,* 72 N. Y. 39, 28 Am. Rep. 93; *Clinton v. Myers,* 46 N. Y. 511-520, 7 Am. Rep. 373; *Hague v. Wheeler* [Pa.], 27 Atl. 714, 22 L. R. A. 141-147, 37 Am. St. Rep. 736.)

Nor would the fact that some of appellant's patrons subscribed for and used respondent's telephones in consequence of the use of the number 888, as alleged, give the appellant a right to an injunction unless, perhaps, the subscribers were obtained by a method of what in law is termed unfair competition or unfair trade. That the matters complained of in this case do not bring it within those terms is well illustrated in the cases of *Deering Harvester Co. v. Whitman & Barnes Mfg. Co.,* 91 Fed. 376, 33 C. C. A. 558; *Dennison Mfg. Co. v. Thomas Mfg. Co.* (C. C.), 94 Fed. 651, and by many of the cases hereinafter cited. Unfair competition as we understand it, consists in one person imitating by some device or designation the wares made and sold by another for the pur-

pose of palming off or substituting his wares for those of the other, and in that way misleading the purchaser by inducing him to buy the wares made and sold by the first instead of those by the second. This, in law, constitutes misrepresentation and deception, and therefore becomes, and is, a fraud, not only against the person whose wares are thus imitated, but against the public as well. There is nothing of this sort in this case. Appellant is not dealing in any article which is being imitated, either in substance or form, by the use of the mystic number 888. It is true that its Trouble Department, or the telephone number that connects that department with all other telephones, is identified by that number. But this is not for the purpose of either increasing its use, or augmenting the sale, or to identify any article of trade or commerce made or sold, but for the sole purpose of making it possible and convenient for the patrons of appellant to communicate with that department. No one is injured, no one is deceived, except as alleged, because respondent is using the same number in having its patrons communicate with its department organized for the same purpose. It is contended, however, that the public are deceived for the reason that the telephones of the contending parties are so similar in construction and appearance that the telephones used by appellant are sometimes mistaken for those of the respondent, and that, when this occurs a patron may, and at times does, call up the respondent's department when he in fact intends to call up appellant's department, and in that way respondent is apprised of the persons using the telephones of appellant and that there is trouble with those particular 'phones; that, upon learning of this fact, it induces appellant's subscribers to abandon the use of its telephones, and subscribe for and use those of the respondent. It is apparent that, when a mistake of this kind occurs, it arises entirely through the carelessness or error of one of appellant's patrons, and not by any direct fraud or misrepresentation made by respondent. The respondent, as we think, lawfully organized its system, and truthfully designated, and now designates, its several departments by certain names, and has connected them with tel-

ephones giving them certain numbers for its own, as well as its patrons' convenience. This is just what appellant did and continues to do. Moreover, it is manifest that respondent need not have recourse to the Trouble Department of appellant to ascertain who are its patrons. These, it is alleged, are made known to all, by means of a published directory published by appellant, wherein the names of the patrons and the number of their telephones are given.

All that the respondent can learn, therefore, is whose telephone is defective, and this only can be so when one of the patrons of appellant makes a mistake by carelessly using the telephone of respondent instead of that of appellant. Is respondent to be enjoined from conducting its business in its own way simply because it has so organized it that careless people may use its telephones for a certain purpose, not for pay, instead of those of appellant, who is a competitor of respondent in the same business? Is it not likewise apparent that the public, generally—that is, such as are using telephones, and are not subscribers to appellant's system—cannot be affected in this way. Neither can those who are subscribers or users of either systems alone be mistaken, unless they use the telephone of some other subscriber. Is respondent to be held legally responsible for occurrences of this character? Surely it cannot seriously be contended that respondent organized its system and is conducting it in that way for the sole purpose of benefiting itself from chance occurrences such as those above mentioned. But suppose it is true that respondent does learn of trouble in respect to appellant's telephones by the means alleged. It could not profit from this unless it can convince the subscriber, using appellant's telephone, that respondent's system is the better one, and is better calculated to serve his purpose, in that it is less liable to cause trouble. This, if competition is permissible in the telephone business, would seem to be legitimate competition. Up to this point, therefore, respondent does not seem to have practiced any deceit, nor fraud, nor misrepresentation, but has simply openly announced to all that its Trouble Department is connected with telephone 888, which is the same number used by ap-

pellant for the same purpose. If misrepresentation occurs it must be apart from what we have so far met with. It must be in fraudulently inducing the patrons of appellant to abandon its telephones and use those of respondent instead. To do so without practicing fraud or deceit, certainly is legal and proper, and is not frowned upon by law, but rather encouraged as beneficial to the public. The change of patrons is accomplished by the methods described in the complaint, and these methods, as we have attempted to show, are not illegal. While it may be that respondent does not, in all things, conform to the Golden Rule in conducting its business, we are not convinced that it violates any legal or equitable rules. In such event an appeal should be made to the moral rather than the legal code. Modern business seems not to be conducted strictly in accordance with the moral code, and if we assumed the authority to issue an injunction every time we thought this code was being violated, it would not be long before there would be no business transacted, except court business, and that would continue, not so much for the reason that it conformed to the code, as it would, as a means to direct, regulate, and control all business affairs. We think the following cases clearly illustrate the principles we seek to apply to the facts in this case. It is conceded that they are not directly in point—by that we mean that they do not decide, nor attempt to decide, a question just like the one presented here—but they do discuss the principles involved in this case: *Canal Co. v. Clark,* 13 Wall. (U. S.) 311-324, 20 L. Ed. 581; *Glendon Iron Co. v. Uhler,* 15 Am. Rep. 599-602; *Lawrence Mfg. Co. v. Tenn. Mfg. Co.,* 138 U. S. 537-551, 11 Sup. Ct. 396, 34 L. Ed. 997; *Goodyear Co. v. Goodyear Rubber Co.,* 128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535; *Manufacturing Co. v. Trainer,* 101 U. S. 51-54, 25 L. Ed. 993; *Brown Chemical Co. v. Meyer,* 139 U. S. 540-544, 11 Sup. Ct. 625, 35 L. Ed. 247; *Columbia Mill Co. v. Alcorn,* 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; *Deering Harvester Co. v. Whitman & Barnes Mfg. Co.,* 91 Fed. 376-380, 33 C. C. A. 558.

There is no claim in this case that the number 888, either

alone, or as used in connection with the telephone connected with appellant's Trouble Department, is, or constitutes, a trade-mark. Nor could this claim prevail, if made, as is well illustrated by the authorities above cited, and to which we refer for this purpose. Nor is it what is known in law as a trade-name, although in some respects it may resemble such. In this case, however, both parties have organized their telephone systems into departments, which departments for convenience are known by certain names, and are, as is necessary for them to be, connected by means of telephones having certain numbers arbitrarily chosen from the Arabic numerals. Both parties have a natural and legal right to name their departments as they please, and likewise to select such numbers for the telephones connecting the several departments with their entire system as they may choose. Is it an invasion of the other's legal rights when one applies the same number to its telephone that is used by the other for the same department? Is this an infringement of a trade-mark, or an interference with an established trade-name? We do not think it is or can be either. The telephone business is peculiar in that each telephone is designated by a number. These numbers are used, we assume, because the numerals admit of almost infinite combinations, and these make it possible to give each telephone a distinct number. If appellant may prevent the use of one number in connection with a certain telephone upon the ground of prior use and inconvenience, why not of all used by respondent when inconvenience results? Of course inconvenience may result, and no doubt does, when the same number is used by the second user for a similar department which is in use by the first. But inconvenience may also arise where patrons of each system have the same number, and yet it is not practicable to prevent a duplication of these numbers. The mere fact that such could be avoided when applied to the several departments of the parties to this action, we think, does not give the legal right to prevent their use by either one or the other. Further, we may take judicial notice of that which is universally known, namely, that the patronage of a telephone system differs greatly from that of

selling and buying articles of manufacture and commerce. The individual telephones are leased or rented at fixed rates and usually for some definite time. One who intends becoming a subscriber to, or user of, either one or the other telephone system in use, will not easily be deceived by the simple fact that the two trouble departments of the different systems, are connected by a telephone having the same number. This is not like an article of commerce labeled in imitation of another, nor in assuming a name, or the number of a well known and established business for the purpose of misleading either actual or prospective buyers. Neither do we find anything in the authorities cited by counsel for appellant which leads to such a result. *Humphreys, etc., v. Wenz* (C. C.), 14 Fed. 250, decides that a number may, when used in connection with words, constitute a trade-mark if used for the purpose of indicating proprietorship or origin of articles of commerce. But there is nothing of that character even remotely, involved in the case at bar. *Weinstock, Lubin & Co. v. Marks* (Cal.), 42 Pac. 142, 30 L. R. A. 182, 50 Am. St. Rep. 57, does not reach this case. In that case was again involved the matter of protecting a trade-name used in connection with a business. The trade-name was assumed by a rival for the express purpose of deceiving the public, and thereby inducing them to trade with him under the same name of that used by the one first using the name. Of course this will not be tolerated. *Dodge Stationery Co. v. Dodge* (Cal.), 78 Pac. 879, is precisely like the case above referred to. *G. & H. Mfg. Co. v. Hall,* 61 N. Y. 226, 19 Am. Rep. 278, is, in principle, like the last two cases cited, and the case of *Koebel v. Chic. L. P. B.* (Ill.), 71 N. E. 362, presents the same question and was decided in the same way. *Howard v. Henriques,* 3 Sandf. (N. Y.) 725, is a case where a hotel had been widely known by the name of the "Irving House" and "Irving Hotel." A rival, with a view of obtaining some of the patronage of said hotel, opened another under the name of the "Irving Hotel," and was enjoined from continuing the same under that name. This case presents familiar principles to which equitable relief is applicable. We see no way, how-

ever, to extend those principles to a case like the one at bar. To do so would revolutionize all the rules of law and equity with which we are familiar, and we are not disposed to do this.

From the foregoing views it follows that the court committed no error in sustaining the objection complained of, and in dismissing the action.

The judgment, therefore, is affirmed with costs.

McCARTY, C. J., and ARMSTRONG, District Judge, concur.