### KINNEY-ROME CO. v. FEDERAL TRADE COMMISSION.

(Circuit Court of Appeals, Seventh Circuit. September 8, 1921.)

No. 2874.

Trade-marks and trade-names and unfair competition ☞68—Giving by manufacturer of premiums to salesmen of retailers not "unlawful or unfair competition."

Giving of premiums by manufacturer to salesmen of retailers, with the knowledge and consent of such retailers, to induce the salesmen to push the sale of the manufacturer's goods, was not "unlawful or unfair competition," within the meaning of Federal Trade Commission Act (Comp. St. §§ 8836a–8836k), making unlawful unfair methods of competition in commerce; such conduct of the manufacturer not constituting fraud nor unfairness to the public.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

Petition to Review an Order of the Federal Trade Commission.

Petition by the Kinney-Rome Company to review an order made by the Federal Trade Commission. Order annulled.

Colvin C. H. Fyffe, of Chicago, Ill., for petitioner.
Marshall B. Clarke, of Washington, D. C., for respondent.

Before EVANS and PAGE, Circuit Judges, and CARPENTER, District Judge.

PAGE, Circuit Judge. This is an original petition filed by petitioner to review an order made by the Federal Trade Commission, respondent, in a proceeding wherein respondent had filed its complaint, charging that petitioner was engaged in manufacturing and selling bed springs in interstate commerce in direct competition with other corporations similarly engaged, and that—

"Respondent [petitioner] for more than one year last past, with the intent, purpose, and effect of stifling and suppressing competition in the manufacture and sale of bed springs and kindred products, in interstate commerce, has given and offered to give premiums, consisting of necktie sets, * * * to the salesmen of merchants handling the products of the respondent [petitioner] and those of its competitors, as an inducement to influence them to push the sales of respondent's [petitioner's] products, to the exclusion of the products of its competitors."

The matter was submitted to the respondent upon an agreed state of facts, in substance as follows:

"That the respondent, the Kinney-Rome Company, in the course of its business of manufacturing and selling 'De Luxe' bed springs, has * * * given and offered to give premiums, such as necktie sets, etc., * * * to the salesmen of merchants handling the products of the respondent and those of its competitors, when such salesmen have been instrumental in making a sale of respondent's 'De Luxe' bed springs; these premiums being given with the knowledge and consent and through arrangements with the merchants who are the employers of said salesmen. * * * Salesmen of respondent's said customers uo not explain the above-described system of premiums to persons to whom they sell the said 'De Luxe' bed springs, so far as is known to respondent."

The findings of fact followed the stipulation of facts, and stated this conclusion:

"That the methods of competition set forth in the foregoing findings, as to the facts under the circumstances set forth, are unfair methods of competition in interstate commerce in violation of the provisions of section 5" of the Federal Trade Commission Act of September 26, 1914. 38 Stats. L. 717 (Comp. St. § 8836e).

Thereupon respondent entered the order here complained of, which is in part:

"It is ordered that the respondent * * * cease and desist from directly or indirectly giving * * * premiums, such as necktie sets, * * * to salesmen or employees of merchants handling the products of the respondent and those of one or more of its competitors, where such salesmen or employees have been instrumental in making a sale of the respondent's products."

Section 5 provides that—

"Unfair methods of competition in commerce are hereby declared unlawful," and "the commission is hereby empowered and directed to prevent persons, partnerships, or corporations, except banks, and common carriers subject to the acts to regulate commerce, from using unfair methods of competition in commerce.

"Whenever the commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition in commerce, and if it shall appear to the commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect."

1. In Federal Trade Commission v. Gratz, 253 U. S. 421, 40 Sup. Ct. 572, 64 L. Ed. 993, it is said:

"The words 'unfair methods of competition' are not defined by the statute and their exact meaning is in dispute. It is for the courts, not the commission, ultimately to determine as matter of law what they include."

While the exact words "unfair methods of competition" have not been frequently, if at all, used in the decisions, yet "unfair competition" and "unfair trade," have been repeatedly the subject of consideration and discussion by federal and state courts, and several times in this circuit. In Pillsbury v. Pillsbury-Washburn, etc., Co., 64 Fed. 841, 845, 12 C. C. A. 432, 436, this court said:

"The right of appellees to relief is * * * rested upon principles applied by courts of equity in cases analogous to cases of trade-marks, where the relief is afforded upon the ground of fraud."

In Cole Co. v. Am. Cement & Oil Co., 130 Fed. 703, 65 C. C. A. 105, it was stated by this court:

"The doctrine of unfair competition is possibly lodged upon the theory of the protection of the public whose rights are infringed or jeopardized by the confusion of goods produced by unfair methods of trade, as well as upon the right of a complainant to enjoy the good will of a trade built up by his efforts, and sought to be taken from him by unfair methods."

In Goodyear, etc., Co. v. Goodyear Rubber Co., 128 U. S. 598, at page 604, 9 Sup. Ct. 166, 168 (32 L. Ed. 535), it was said:

"The case at bar cannot be sustained as one to restrain unfair trade. Relief in such cases is granted only where the defendant, by his marks, signs, labels, or in other ways, represents to the public that the goods sold by him are those manufactured or produced by the plaintiff."

In Howe Scale Co. v. Wyckoff, etc., 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972, the court stated:

"The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and, if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails."

In International News Service v. Associated Press, 248 U. S. 215, at page 241, 39 Sup. Ct. 68, 73 (63 L. Ed. 211, 2 A. L. R. 293), it was said:

"It is said that the elements of unfair competition are lacking because there is no attempt by defendant to palm off its goods as those of complainant, characteristic of the most familiar, if not the most typical, cases of unfair competition [citing Howe Case, supra]. But we cannot concede that the right to equitable relief is confined to that class of cases. In the present case the fraud upon complainant's rights is more direct and obvious. Regarding news matter as the mere material from which these two competing parties are endeavoring to make money, and treating it, therefore, as quasi property for the purposes of their business, because they are both selling it as such, defendant's conduct differs from the ordinary case of unfair competition in trade principally in this that, instead of selling its own goods as those of complainant, it substitutes misappropriation in the place of misrepresentation, and sells complainant's goods as its own."

See, also, Keystone Type Foundry v. Portland Pub. Co., 186 Fed. 690, 108 C. C. A. 508; Sterling Remedy Co. v. Eureka Chem. & Mfg. Co., 80 Fed. 105, 25 C. C. A. 314; Rathbone, Sard & Co. v. Champion Steel Range Co., 189 Fed. 26, 30, 110 C. C. A. 596, 37 L. R. A. (N. S.) 258; Bates Mfg. Co. v. Bates, etc., Co. (C. C.) 172 Fed. 892; West Pub. Co. v. Ed. Thompson Co. (C. C.) 169 Fed. 833; Manitowoc Malting Co. v. Milwaukee Malting Co., 119 Wis. 543, 97 N. W. 389; Sartor v. Schaden, 125 Iowa, 696, 101 N. W. 511; Regent Shoe Mfg. Co. v. Haaker, 75 Neb. 426, 106 N. W. 595, 4 L. R. A. (N. S.) 447; Rocky Mountain Bell Tel. Co. v. Utah Independent Tel. Co., 31 Utah, 377, 88 Pac. 26, 8 L. R. A. (N. S.) 1153; Bissell Chilled Plow Wks. v. T. M. Bissell Plow Co. (C. C.) 121 Fed. 357; Am. Brewing Co. v. Bienville Brewery (C. C.) 153 Fed. 615.

There are many other cases in the federal courts which cite the Howe and Goodyear Cases.

2. It is not conceived that Congress, which laid down no definition whatever, intended to either limit or extend the matters which constitut-

ed unfair methods of competition prior to the passage of the Clayton Act (Curtis Pub. Co. v. Federal Trade Com. [C. C. A.] 270 Fed. 881, 908), but that its object was the creation of a board of commissioners, who, as stated in the Sears-Roebuck Case, 258 Fed. 307, 311, 169 C. C. A. 323, 327 (6 A. L. R. 358)—

"are to exercise their common sense, as informed by their knowledge of the general idea or unfair trade at common law, and stop all those trade practices that have a capacity or a tendency to injure competitors directly or through deception of purchasers, quite irrespective of whether the specific practices in question have yet been denounced in common-law cases."

We conclude, from the discussion of the term "unfair competition" by the courts, and we are of opinion, that there must be some fraud in trade that injures a competitor, or lessens competition, before it can be said that there has been used an "unfair method of competition."

3. Without, perhaps, admitting petitioner's conclusions, even if its premises are true, respondent vigorously assails those premises, saying:

"Petitioner's whole brief is based on this false assumption—that the manufacturer is justified in doing whatever the dealer may do."

We are of opinion that the assumption is not false, but is fully justified. The stipulated facts show:

"These premiums being given with the knowledge and consent and through arrangements with the merchants who are employers of said salesmen."

It cannot be that a merchant may personally do a thing touching his business that is legal, but that it becomes illegal when done by another through his procurement. When petitioner did the things complained of through arrangement with the merchants, the merchants became parties to the act. As it effected sales of their property, presumably they profited by the arrangement. If it was lawful as to one, it was lawful as to the other.

4. In determining whether there was used "an unfair method of competition," it must always be kept in mind that the thing complained of was done in the merchant's business through an arrangement with him. What, then, may the merchant do? In United States v. Freight Ass'n, 166 U. S. 290, at page 320, 17 Sup. Ct. 540, 551 (41 L. Ed. 1007), the Supreme Court said:

"The trader or manufacturer * * * carries on an entirely private business, and can sell to whom he pleases; he may charge different prices for the same article to different individuals; he may charge as much as he can get for the article in which he deals, whether the price be reasonable or unreasonable; he may make such discrimination in his business as he chooses, and he may cease to do any business whenever his choice lies in that direction."

That case has been repeatedly approved, and a portion of that language was used in United States v. Colgate, 250 U. S. at page 307, 39 Sup. Ct. 468, 63 L. Ed. 992, 7 A. L. R. 443. In respondent's brief is asserted a self-evident truth, viz.:

"The manufacturer has no such relation to the goods after he has sold them as entitles him to control their resale by the dealer."

This means that not only petitioner, but every manufacturer, is excluded from all right to control the merchant in his resale of his goods.

No one, then, having any right to interfere in his business, or to control in any way the resale of his goods, the merchant may do and permit to be done anything in connection with his business that he may see fit, and those he permits to participate in his business may do anything in that business permitted by him, and no one has any right to complain, unless that which is done amounts to a fraud upon his rights. If such right did not belong to the merchant, then he would not have the ordinary rights of contract that belong to every man, and he would be compelled to carry the burdens, risks, and hazards of a business, subject, without his consent, to the control of every manufacturer who might have sold him a bill of goods.

5. The rights which it is urged have been affected are the rights of other manufacturers and also the rights of the public. Unless that which petitioner did fraudulently affected some competition in which either or both were interested, then the order to cease and desist was improvidently entered. It is conceded that no manufacturer had any right to interfere in the merchant's business. It is equally true that, when any manufacturer sold to the merchant, he met, overcame, and ended any competition in which he had any interest. His interest in those goods was terminated, and when they again entered the channels of trade they entered as the goods of a new owner, along with the other goods owned by him. The new owner's problems were with other retail dealers, handling oftentimes goods identical in make and kind with his own, and competing for the favor of the buying public. It needs no discussion to show that that was wholly his competition, to be met in his own way, by his own methods, and in it the manufacturer had no part. Any plan or scheme to advance one kind of goods and to keep back another is a matter wholly and absolutely under the control of the merchant in meeting his problems in his competition, and does not constitute a fraud, nor is it unfair to any one who does not own the goods.

Likewise the public, if it has an interest in competition has such interest only in the competition between different merchants. It has no right to demand for itself that a merchant shall set up a competition in his own house and between his own goods. The channels of trade that must be kept open for the manufacturer are those that run between him and other manufacturers, and necessarily end when he has sold. The channels of trade that must be kept open for the buying public do not run through the retailer's store, but do run between the different stores seeking the favor of the buying public.

6. We are of opinion that there can be nothing in the contention that some special interest in a clerk which is undisclosed to the buying public represents an unfair method of competition, because of an incentive and opportunity of the clerk to deceive the public. Undoubtedly the clerk, with the master's consent, may discriminate between the master's goods. All of the buying public, with at least ordinary knowledge and intelligence, knows that a salesman is representing the merchant's interest, and that every merchant may and very frequently does have reason for pushing the sale of one kind of goods more than another; but, if that were not true, it would be little less than an absurdity to

say that a salesman, who often is the merchant himself, in order to escape the charge of unfairness, must disclose to every would-be buyer his interest in the transaction in hand. That is just what the contention, if allowed, would lead to.

Nor is it conceived that there is any danger from falsehood or misrepresentation. A salesman, with the master's consent, may discriminate all he pleases between the goods he has to sell. Neither a salesman having a special interest in one article, where he has many to sell, nor a salesman with a single article to sell, has any right to indulge in falsehood and misrepresentation; but there is here no evidence of falsehood or misrepresentation.

The order to cease and desist is annulled and set aside.