## CAIGAN v. PLIBRICO JOINTLESS FIREBRICK CO.

### No. 2795.

Circuit Court of Appeals, First Circuit.

May 23, 1933.

Israel Caigan, of Boston, Mass., pro se.

John M. Raymond, of Boston, Mass., for appellee.

Before BINGHAM, WILSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge.

On July 22, 1929, the appellee, an Illinois corporation, brought this suit for unfair competition against Caigan, a citizen of Massachusetts. The appellant answered, and filed a cross-bill. The trial was in open court, in November, 1930, followed by an opinion, containing findings, on December 9, 1930 (3 F. Supp. 983), and a final decree for the plaintiff on May 15, 1931. In the court's opinion he ordered the cross-bill dismissed, but the record shows no decree and no appeal thereon. It follows that the arguments on both sides on the cross-bill are without foundation; that the sole question before this court is as to the validity of the decree for the plaintiff. Defendant (not a lawyer) tried and argued his own case.

The business in question is that of selling fire clay to line boiler furnaces. Furnaces are sometimes lined with fire brick set in water, and sometimes with fire clay which, when used, is sufficiently moist to be workable and adherent, and is then referred to as pliable in distinction from brick linings. The plaintiff is one of numerous concerns manufacturing and selling this material. It began business as early as 1914 under the name of Pliable Fire Brick Company, which, in 1924, was changed to Plibrico Jointless Firebrick Company. Plibrico is a coined word, registered by the plaintiff in the United States Patent Office as its trade-mark. The plaintiff's business is widely extended; its sales amount to about $1,250,000 a year.

In 1916, the defendant Israel Caigan, after four years' experience in heating and engineer work, went into business for himself at 110 State street, Boston, in heating, power plant, and mechanical equipment, adopting the trade-name "Caigan Engineering Equipment Company." In 1918, he added the sale of pliable fire-brick material to his other lines. He has also carried on the business of repairing boilers, etc., sometimes employing three to five brick masons and their helpers in this boiler brick repair work. In July, 1925, he moved to 162 Tyler street, Boston.

He purchased his pliable fire-brick material from two of the plaintiff's competitors, until, in April, 1920, he arranged with the

plaintiff for the exclusive right to sell plaintiff's product Plibrico, in the New England States, agreeing, on his part, to handle no other pliable fire-brick material. This arrangement continued until November 8, 1925, when on 60 days' notice and after much friction, it was terminated by the plaintiff. Thereafter litigation arose between the parties, marked by much ill feeling—with charges and counter charges of slander and libel, and generally of unfair dealing—on both sides. We make no assessment of the comparative merits and demerits of the parties in these unseemly quarrels; but we must have a care not to become a party thereto by sustaining a frivolous or unsupported charge.

The record is singularly lacking in any evidence dealing with the merits of the various outputs of this pretty common combination apparently of clay and cement. We find nothing to indicate that Plibrico had, or was recognized in the trade as having, any peculiar or unusual quality for lining boilers, over that of other makes of the same sort of stuff. Such good will as attached to the name was grounded on advertising and pushing it on the trade.

For about five and a half years Caigan, under the name of "Caigan Engineering Equipment Company," sold Plibrico. How far any good will that accrued in the course of this trade attached to the substance manufactured by the plaintiff, and how far it attached to Caigan doing business under the name of the Caigan Engineering Equipment Company, is left entirely uncertain. Plibrico is only the name attached to the plaintiff's output of a fairly common, unpatented material, manufactured by numerous concerns.

█ Plaintiff's right was limited to its trademark. But as pointed out by Mr. Justice Pitney in United Drug Co. v. Rectanus Co., 248 U. S. 90, 39 S. Ct. 48, 50, 63 L. Ed. 141, a trade-mark is not "a right in gross or at large, like a statutory copyright or a patent for an invention, to either of which, in truth, it has little or no analogy. Canal Co. v. Clark, 13 Wall. 311, 322, 20 L. Ed. 581; McLean v. Fleming, 96 U. S. 245, 254, 24 L. Ed. 828. There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trade-marks is but a part of the broader law of unfair competition; the right to a particular mark grows out of its use, not its mere adoption; its function is simply to designate the goods as the product of a particular trader and to protect his good will against

the sale of another's product as his; and it is not the subject of property except in connection with an existing business. Hanover Milling Co. v. Metcalf, 240 U. S. 403, 412–414, 36 S. Ct. 357, 60 L. Ed. 713." Cf. Ammon & Person v. Narragansett Dairy Co. (C. C. A.) 262 F. 880. See, also, In re Jaysee Corset Co. (D. C.) 201 F. 779. The good will created by defendant's sale of Plibrico for five and a half years was obviously divided, in undetermined and underminable proportions, between Caigan (doing business under the name of Caigan Engineering Equipment Company) and Plibrico. The termination of plaintiff's relations with Caigan left him in full ownership of the good will attaching to his name, place of business, and telephone numbers. The tendency of customers to continue pre-existing business relations, to call the same telephone, and to go to the same office, when wanting the same sort of substance, belonged to Caigan. The desire of customers to obtain Plibrico, because of a possibly assumed special merit of Plibrico, belonged to the plaintiff; it may also have created some good will by advertising.

After the termination of the defendant's agency for New England, the plaintiff put six other agents into this field; and took Caigan's former office at 110 State street; but as the court below found, "seems not to have given any widespread notice that Caigan had ceased to represent it." Caigan proceeded in the same general line of business, buying his pliable fire clay linings from another producer. He also had on hand a few drums containing Plibrico. He received certain orders for Plibrico addressed to him under the name he had used while the plaintiff's representative. He filled these orders with Plibrico so long as his supply lasted. In not more than twelve cases, shortly after the termination of his relations with the plaintiff he filled these orders by shipping his pliable flint clay products. On this point the court said:

"In the years immediately following his separation from the plaintiff, he received from time to time orders for Plibrico from persons who supposed that he was still selling it. These orders he filled with his own product 'Flint-Clay.' He billed it in that name. If any objection was made by the buyer, he explained that it was not Plibrico but was as good or better. It is not easy to prove a course of business of this sort; but from the instances which the plaintiff has been able to establish I have no doubt that the facts are as above stated, and that Caigan's regular course of business, after separating from the

851

plaintiff, was to endeavor to fill all orders for 'Plibrico' which came to him with 'Flint-Clay' and not to mention the difference unless it was called to his attention by the purchaser; and I so find."

The court's apparent finding of a "course of business" of substituting Flint Clay for Plibrico, whenever orders came to defendant for Plibrico, is clearly wrong. The overwhelming weight of evidence is to the contrary. The defendant took great pains to advertise his Pliable Flint Clay product in every practicable way. In November, 1925, after terminating his relations with the plaintiff, he started mailing each month to 4,200 (later increased to 4,500) concerns, cards and other advertising matter for his Pliable Flint Clay, with a return postal card attached. Before the trial, some five years later, he had sent out 270,000 such advertisements. He testified without contradiction that, during the same period, he had traveled 145,000 miles, leaving his Flint Clay literature with every prospect called upon. His advertising of Flint Clay is plain and distinctive. So also is the marking on the defendant's container. Plaintiff's drum, painted bright red, has stenciled on it in white: "Plibrico reg. U. S. Pat. Off. Jointless Furnace Lining Plibrico Jointless Firebrick Co. Chicago S. T. C. Method of Packing Patented July 22, 1924." The defendant's drum is of reddish brown color, and has on it in white, " 'Flint-clay' Pliable Fire Brick Co. Boston, Mass.," with mallet, hatchet, and trowel at its foot.

■ This case of alleged unfair competition comes down to a very narrow question. Defendant had an absolute right to sell the same general kind of product as Plibrico, using the same name under which he had carried on his business both before and during the period of his representation of the plaintiff. The only evidence of palming off is that in not more than twelve cases, on orders addressed to the Caigan Engineering Equipment Company, and calling for Plibrico, the defendant, without oral or written explanation, furnished his Flint Clay Pliable Firebrick product, making the shipments in a drum plainly so marked, and invoicing the shipments as Flint Clay. This plainly was not a palming off within the meaning of the law. So to hold requires a finding that the customers were justifiably deceived in accepting and using Flint Clay Pliable Firebrick instead of Plibrico, in the face of the fact that, when received, the containers and the invoices both showed that the orders were not filled by Plibrico. We cannot assume that these recipients were morons or that they did not act with ordinary care to see that they got what they really wanted. "A court of equity will not interfere, when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other." By the court in McLean v. Fleming, 96 U. S. 245, 255, 24 L. Ed. 828. Compare Munro v. Tousey, 129 N. Y. 38, 29 N. E. 9, 14 L. R. A. 245; Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 S. Ct. 151, 37 L. Ed. 1144. It was fair competition that plaintiff sought to enjoin. Compare Flagg Mfg. Co. v. Holway, 178 Mass. 83, 59 N. E. 667.

■ The markings on the drums and the invoices were at least constructive notice of the substitution. Boyd v. Buffalo Steam Roller Co., 87 Misc. 20, 149 N. Y. S. 1050, 1052; Kansas Moline Plow Co. v. Sherman, 3 Okl. 204, 41 P. 623, 625, 626, 32 L. R. A. 33; Mayor, etc., of City of Baltimore v. Whittington, 78 Md. 231, 27 A. 984, 985.

The case is bare of the essential element of any device or designation used by the defendant for the purpose of palming off his goods for those of the plaintiff. Compare Rocky Mountain Bell Tel. Co. v. Utah Ind. Tel. Co., 31 Utah, 377, 88 P. 26, 8 L. R. A. (N. S.) 1153. Caigan had sold during the five years 7,000 drums of Flint Clay Pliable Fire material for over $110,000; on these twelve cases of substitution, involving $180, he made a profit of $42. The case might well have been dismissed as de minimis, even if these few cases had been shown to be cases of actual palming off.

We turn now to the essential parts of the decree. There is no evidence whatever to support paragraphs 1 and 3, which read as follows:

"1. That the defendant Caigan be and he hereby is permanently enjoined from representing in any manner that he is the sales representative of or has any connection with the plaintiff, or is selling its product known as 'Plibrico.' "

"3. That the defendant Caigan be and he hereby is permanently enjoined from representing in any way that the plaintiff has ceased to do business or has ceased to manufacture Plibrico."

Paragraph 4, which reads as follows: "4. That the defendant Caigan be and he hereby is permanently enjoined from using any cut of a drum of plastic fire brick with tools arranged about the bottom of the same to advertise any product or service which competes with the product or service of the plaintiff;

except that the defendant Caigan may use such advertising containing such cuts as he now has on hand," has, since the argument in this court, been waived by plaintiff's counsel.

Paragraph 2, which reads as follows: "2. That the defendant Caigan be and he hereby is permanently enjoined from acting upon any orders addressed to the plaintiff, or its representatives, otherwise than by forwarding the same to the plaintiff, and from filling any orders calling for the product of the plaintiff known as 'Plibrico' with any material other than Plibrico," is, as to the first part, entirely unsupported by the evidence. The last part, enjoining the defendant from filling orders for Plibrico with any other material, cuts off defendant from his plain right to persuade, directly or indirectly, the customer to take his Flint Clay output instead of Plibrico. It overlooks the absence of the essential element of deception in the substitution of a differently named substance, performing the same function; it prevents defendant from using his portion of the goodwill created during his five and a half years of selling the plaintiff's product.

On the whole, we are of the opinion that the plaintiff makes out no case of unfair competition by its former New England agent, and that the case must be reversed with costs. Compare Flagg Mfg. Co. v. Holway, 178 Mass. 83, 59 N. E. 667; Hildreth v. McDonald, 164 Mass. 16, 41 N. E. 56, 49 Am. St. Rep. 440.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellant recovers costs in both courts.