Jonas J. Seldner, and others, Executors *vs.* Andrew B. McCreery.

*Construction of Will—Investments by Executors not Authorized by Will—Sale by Executors without Order of Court prior to Act of 1843—Purchaser at Executors' Sale—Distribution of Purchase money—Appeal from Order ratifying Auditor's Account—Infancy—Husband and Wife—Bona fide Purchaser without Notice—Specific performance of Contract for the Sale of Real estate—Effect of Probate of Will in Common form.*

The will of V. K. contained the following clause: "I desire that my executors hereinafter named, or the survivors or survivor of them, may sell and dispose of my houses, lands, and real estate whenever they judge it to the advantage of my children. * * * The proceeds of the above said property is to be invested in safe or productive stocks or funds, or lent out on mortgages of undoubted security, for the benefit of my children." The executors of said testator purchased with the funds of his estate certain leasehold property which was conveyed to them on the follow-

ing trust: "In trust for the uses and purposes, and under and subject to the powers, expressed, limited, and declared in and by the last will of V. K. in relation to the proceeds of those portions of his estate, a sale whereof was authorized by his said will." HELD:

1st. That this purchase could not be upheld under said clause of V. K's will.

2nd. That it could not be included in the investments which the executors were authorized to make; that is to say, safe and productive stocks or funds, or mortgages of undoubted security.

3rd. That as the purchase was made with the funds of their testator's estate, of course the estate was entitled to the property. But if any loss had accrued the executors would have been bound to make it good, inasmuch as they had, without due authority, exposed to hazard the money intrusted to them in a fiduciary capacity.

4th. That when the leasehold became the property of the estate, the executors were justified in dealing with it in the same manner as with any other personalty in their hands to be administered.

5th. That a contract of sale of said property made by them to a certain N. and a subsequent deed to the executor of N., the same having been made before the Act of 1843, did not require an order of Orphans' Court to give them validity.

6th. That a recital in the deed to said executor of N., that all the purchase money had been paid was *prima facie* evidence of payment.

7th. That even if the purchase money had not been paid, a suit brought at this time to recover it would be barred by limitations, more than fifty years having since elapsed.

8th. That even if the executors of V. K. had failed to distribute the purchase money the purchaser would not be responsible for the failure of duty on the part of the executors.

An auditor's account distributing the estate of V. K. was finally ratified in the year 1836, in a proceeding to which all persons having an interest in the estate were made parties. All the distributees filed releases to the executors, except an infant, for whom said executors were guardians, and who did not become of age until the year 1841. HELD:

That the infant on arriving at age, could have obtained redress from his guardians for any breach of duty on their part in

Seldner *vs.* McCreery.

respect to his share of said estate; but after the lapse of fifty years no appeal could be taken from the order of ratification of the account, which must stand as a final settlement of the rights of the parties interested in the distribution of said estate.

Where property conveyed to a married woman is paid for in part by her husband, in prejudice of the rights of his creditors existing at the time, the property will be subject to their claims to the extent of the amount paid by him; but under no circumstances can it be held that a purchaser from the wife or from her executors will be affected by notice of any matter which he could not ascertain by diligent inquiry.

A *bona fide* purchaser for value, without notice, is protected, and he cannot be adjudged to have notice of anything apparently improbable, and which diligent and reasonable inquiry would not disclose.

On a bill filed by the executors under a will, for the specific performance of a contract for the sale of real estate made between them and the purchaser under a power of sale contained in the will, it was HELD:

1st. That the validity of the sale by the executors was not affected by the fact that the will·was proved in common form, and might thereafter be caveated, and the purchaser thus become involved in litigation.

2nd. That when the probate of the will was made and letters testamentary duly granted the executors had as full powers of administration as the law could, under any circumstances, give them. (Article 93, section 37, of the Code.)

3rd. That where a title is perfect on its face, and no known circumstances exist to impeach it, or to put a purchaser on inquiry, one who buys *bona fide* and for value, occupies one of the most highly favored positions in the law.

4th. That if circumstances afterwards come to light which invalidate the title of the seller, there is nothing to prevent redress against him in behalf of the party who may be injured, but the innocent purchaser must be protected, at all events.

APPEAL from the Circuit Court, No. 2, of Baltimore City.

The case is stated in the opinion of the Court. The contract of sale referred to in the opinion is the follow-

ing: This memorandum witnesseth that Mr. Andrew B. McCreery has purchased from Jonas J. Seldner, Charles S. Seldner and George L. Seldner, the warehouse property and its lot, known as "No. 37 Hopkins Place," in the City of Baltimore, for the sum of forty-five thousand dollars in fee, that is to say, $15,000, subject to a mortgage of thirty thousand dollars now on it, and the fifteen thousand dollars is to be paid as soon as the title papers are executed. The property is to be free from encumbrances, except the mortgage mentioned; and it is a condition that the Mess. Seldners, on or before the time for the payment of the fifteen thousand dollars, are to furnish Mr. McCreery the agreement of the mortgagees to accept payment of the mortgage debt on the first day of January, 1891, and said Seldners have sold the said property to said McCreery on the terms aforesaid.

A. B. McCREERY, [Seal.]
JONAS J. SELDNER, [Seal.]
CHARLES S. SELDNER, [Seal.]
GEORGE L. SELDNER, [Seal.]

Witness:—J. B. Chastian,
as to Mr. McCreery.
Wm. J. Devon.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, and McSHERRY, J.

*D. K. Este Fisher,* and *William A. Fisher,* (with whom was *William Cabell Bruce,* on the brief,) for the appellants.

*Alexander S. Larned,* and *Arthur W. Machen,* for the appellees.

BRYAN, J., delivered the opinion of the Court.

Certain real estate was sold by the executors of Eva Seldner, deceased, under a power of sale given to them

by her will.   The purchaser alleged that the title was defective and refused to accept and pay for the land.   A bill in equity was filed by the executors for a specific performance of the contract of sale, and the Court passed a *pro forma* decree dismissing the bill, with costs. The executors, have taken this appeal.   The principal question is whether the title of the property sold is such as a purchaser ought to be required to take.

The important facts affecting the title are as follows: In 1825, Thomas Wilson being seised in fee of the property in question leased it for ninety-nine years, renewable forever, to Gerard T. Hopkins.   In February, 1830, the unexpired term was conveyed to the executors of Bernard J. Von Kapff, subject to the ground rent, and upon certain trusts which will hereafter be more particularly mentioned.   In March, 1830, the executors of Von Kapff sold this leasehold to William Norris, and executed a bond of conveyance, binding themselves to convey the title to him when he should pay the purchase money in full.   In June, 1833, they conveyed the title to his executor by a deed, which recited that the purchase money had been paid in full.   By due conveyances (which it is not necessary now to mention in detail,) this leasehold having been merged in the reversion expectant on it, the whole fee was conveyed to Florence Bailey, and she on the same day conveyed the fee to Eva Seldner, who was then the wife of Lewis Seldner.   On the same day Seldner and wife conveyed to trustees for Florence Bailey another lot of ground, by a deed which recited that it had been agreed that it should be accepted from Lewis Seldner at a valuation of $15,000 in part payment of the purchase money of the lot conveyed to Mrs. Seldner.   Lewis Seldner died in 1881, leaving a will in which he made Mrs. Seldner sole legatee for life, · and made her and one of his sons executors.

We will consider the objections which have been made to this title.   It is maintained that the leasehold was

not validly conveyed to the executor of William Norris by Von Kapff's executors. We find the following clause in his will: "I desire that my executors hereinafter named, or the survivors or survivor of them, may sell and dispose of my houses, lands and real estate whenever they judge it to the advantage of my children. * * * * The proceeds of the above said property is to be invested in safe and productive stocks or funds, or lent out on mortgage of undoubted security for the benefit of my children." The property was conveyed to the executors of Von Kapff on the following trust: "In trust for the uses and purposes and under and subject to the powers expressed, limited and declared in and by the last will of Bernard J. Von Kapff, in relation to the proceeds of those portions of his estate, a sale whereof was authorized by his said will." This purchase cannot be upheld under the clause just cited from Von Kapff's will. It cannot be included in the investments which they were authorized to make; that is to say, safe and productive stocks or funds, or mortgages of undoubted security. As the purchase was made with the funds of their testator's estate, of course the estate was entitled to the property. But if any loss had accrued, the executors would have been bound to make it good, inasmuch as they had without due authority exposed to hazard the money entrusted to them in a fiduciary capacity. But when the leasehold became the property of the estate, the executors were justified in dealing with it in the same manner as with any other personalty in their hands to be administered. The contract of sale to William Norris, and the subsequent deed to his executor were made before the Act of 1843, and consequently an order of the Orphans', Court was not required to give them validity. We can see no objection to them. The deed to Norris's executor contained a recital that all the purchase money had been paid. This recital is *prima facie* evidence of payment. Of

course if it had not been paid the executors could have recovered it by action at law upon the requisite proof. But such suit has been barred by limitations for more than fifty years. It has not been suggested that a vendor's lien, could be maintained at this time. It has, however, been alleged that there is no sufficient proof, that the purchase money for this leasehold has been distributed to the legatees of Von Kapff. But the purchaser would not be responsible for any failure of duty on the part of the executors. We learn from the record, however, that in 1833, a bill in equity was filed by Von Kapff's executors praying the Court to assume jurisdiction of the trusts, and to provide for the settlement of all necessary accounts in connection with the statement of the estate. All the children of the testator, they being the residuary devisees and legatees, were made defendants, and were duly summoned and answered. An auditor's account was filed in due course in January, 1836, which distributed the estate, and we suppose that we are to understand from the agreement of counsel that it was duly ratified. All of the parties entitled to a share in the residue filed releases to the executors acknowledging the receipt of the amounts audited to them, except one, who at the date of the filing of the bill (June, 1833,) was a boy thirteen years of age. The executors were the guardians of this infant. This ratification of the auditor's report, unappealed from, has certainly, concluded the rights of all parties to the suit.

The infant became of age in 1841. If any breach of duty had existed on the part of his guardians who were also the executors, he could then have obtained redress. Most certainly no appeal can now be taken from the order of ratification, and it must stand as a final settlement of the rights of the parties interested in the distribution of the Von Kapff estate.

An objection is made to the title because Lewis Seldner, the husband, paid a portion of the purchase money.

The evidence is to the effect, that he owed his wife more than the amount paid by him.    But we will consider the question without regard to this part of the proof.    If this payment by Seldner was in prejudice of the rights of his creditors existing at the time, of course the property would be subject to their claims to the extent of the amount paid by him.    But under no circumstances. could it be held that a purchaser from Mrs. Seldner, or from her executors, would be affected by notice of any matter which he could not ascertain by diligent inquiry. Now the utmost degree of diligence would not discover anything in derogation of this title.    The inquirer would find that this property was conveyed in April, 1874; that Lewis Seldner died in 1881; that the estate has been fully administered by his executors; that a notice to creditors was duly published requiring them to exhibit their claims against the estate on or before the twenty-second day of March, 1882; that twelve claims were proved against the estate, all of which except five have been paid, and that these five aggregate $597.00; that the executors accounted for a personalty amounting to $54,134.13.    He would also find that when Lewis Seldner died he was seized and possessed of real and leasehold estate estimated to be worth $205,609.57. Without assuming that this estimate of value is altogether correct we do not think that it can be reasonably inferred that any creditor of Seldner was delayed, hindered or defrauded by a gift of $15,000.00 to his wife in April, 1874.    We would have to suppose that there was a creditor at that time whose debt has not been barred by limitations; that he has been lying by without making any attempt to collect it; and that the debt was for a larger amount than could be collected from him during his life-time or from his estate after his death by the ordinary and convenient processes of law.    Such a conclusion certainly cannot be rationally drawn from any facts

Seldner *vs.* McCreery.

which the most diligent inquiry would disclose, and therefore a purchaser of this property is not bound to adopt such a conclusion. A *bona fide* purchaser for value without notice is protected and he cannot be adjudged to have notice of anything apparently improbable and which diligent and reasonable inquiry would not disclose.

Another objection urged to the title is that as Mrs. Seldner's will was proved in common form, it may hereafter be caveated, and the purchaser would thus be involved in litigation. When the probate of the will was made and letters testamentary duly granted, the executors had as full powers of administration as the law could under any circumstances give them. It is said that the probate might hereafter be annulled, and the letters revoked. This is very true. But until this occurrence shall take place the probate and grant of letters by the Orphans' Court must stand and be effectual. The administration of estates of deceased persons must not be delayed by the suggestion of future contingencies of this kind. The powers committed to executors in the solemn forms of law would be of no avail, if they are required to forbear the exercise of them, for the reason that in some possible future event they may be withdrawn. The business of the Orphans' Court could not be conducted on such a basis. The statute has provided differently. By Article 93, section 37, of the Code, it is enacted as follows: "All acts done by any executor or administrator according to law, before any actual or implied revocation of his letters, shall be valid and effectual." Sales duly made by an executor under a power given by a will would be good. And no one would be damnificd by such sales; they would merely effect a change in the form of the property; the proceeds of the sales would go into the hands of the executor in the shape of money. In case of a revocation of his letters, they would be turned over to his successor, in the trust of

administration, to be distributed in the manner which should be decided by law. But we do not wish to rest our decision on this narrow ground. Where a title is perfect on its face, and no known circumstances exist to impeach it, or to put a purchaser on inquiry, one who buys *bona fide* and for value, occupies one of the most highly favored positions in the law. If circumstances afterwards come to light which invalidate the title of the seller, there is nothing to prevent redress against him in behalf of the party who may be injured; but the innocent purchaser must be protected at all events. No facts are shown which render it in any degree probable that Mrs. Seldner's will is in any respect invalid; it has not been suggested that she was incompetent to make a will, or that it was procured by fraud, undue influence, or in any other improper manner. Nor has it been shown that there is a probability that it will hereafter be made the subject of a contest. We have been referred to *Emmert vs. Stouffer*, 64 *Md.*, 543. In that case the Orphans' Court had refused probate to an alleged will under circumstances which deprived their adjudication of all validity. This Court held that the proceedings of the Orphans' Court did not prevent the will from being propounded and probated in the future. The will was a standing menace to purchasers and a warning that the title of the heirs-at-law of the deceased was liable to be defeated by a probate. This Court had no difficulty in deciding that they would not compel a purchaser of real estate from the heirs-at-law to take the property. He would have taken it with litigation made ready to his hand.

By the contract of sale in this case the sellers were bound to furnish to the purchaser an agreement on the part of a mortgagee of the property to accept payment of the mortgage debt. We will reverse the *pro forma* decree of the Circuit Court, with costs above and below,

and direct a decree for the specific execution of the con-
tract of sale, on condition that the agreement of the
mortgagee is obtained in binding form, and on condition
that the contract of sale is ratified by the Orphans'
Court.

> *Decree reversed and cause remanded, in order*
> *that the Circuit Court may pàss a decree in*
> *accordance with this opinion.*

(Decided 4th February, 1892.)