Mayor, &c.. of Baltimore *vs.* Whittington.

(Decided 16th November, 1893.)

---

THE MAYOR AND CITY COUNCIL OF BALTIMORE, AND CLARENCE M. ELLINGER *vs.* JACOB CRAFT WHITTINGTON.

*Leasehold property—Sale for Taxes—Notice to Collector—Actual notice.*

By section 47 of Article 49 of the Municipal Code of Baltimore City, it is enacted that when a lot of ground is chargeable with

the payment of taxes, and is subject to a lease for a term of years, renewable forever, the collector shall, in the sale of such lot for non-payment of taxes, first sell only the leasehold interest, provided the books of the city disclose the fact that the lot is on lease, or the collector has "actual notice" thereof. Certain leasehold estate in the City of Baltimore was decreed to be sold in a proceeding for the foreclosure of a mortgage thereon. After this decree was rendered a petition was filed in the foreclosure proceeding by the city collector, signed by his attorney, and sworn to by the deputy city collector, representing that taxes were in arrear upon the property "decreed to be sold," and praying that he be allowed to collect the same by sale of the property in the ordinary way. HELD:

That the collector had such "actual notice" of the existence of the leasehold estate as to bring him within the proviso of the City Code, and he was not authorized to sell the fee simple estate until he had first offered the leasehold for sale.

Actual notice to an attorney is actual, and not merely constructive, notice to his client of matters involved in the litigation.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from a decree of the lower Court (DENNIS, J.,) setting aside and annulling the tax sale of a certain lot, mentioned in the proceedings, to the Mayor and City Council of Baltimore, and the subsequent sale by the latter to Clarence M. Ellinger, and adjudging that Jacob Craft Whittington hold the reversionary fee simple interest in the property free and clear of any claim whatsoever of the said Mayor and City Council of Baltimore, or of the said Clarence M. Ellinger by virtue of said tax sale; and restraining the said Mayor and City Council of Baltimore and the said Clarence M. Ellinger from taking possession of said lot, or from interfering with the said Whittington in the quiet possession of the same. The case is stated in the opinion of this Court.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, ROBERTS, McSHERRY, and BRISCOE, J.

Mayor, &c., of Baltimore *vs.* Whittington.

*James P. Gorter*, (with whom were *Wm. S. Bryan, Jr.*, *Thomas G. Hayes*, and *Frederick W. Story*, on the brief,) for the appellants.

*Fielder C. Slingluff*, for the appellee.

McSHERRY, J., delivered the opinion of the Court.

By section 47, of Article 49, of the Municipal Code of Baltimore City, it is enacted, in substance, that when any lots of ground are chargeable with the payment of taxes, and are subject to ground rents or leases for terms of years, renewable forever, the collector shall, in the sale of such lots for non-payment of taxes, first sell only the leasehold interest, if it should sell for an amount sufficient to pay the taxes, but, if it should not, then that he shall sell the whole fee simple estate, provided these provisions "shall not apply to cases where the books of the city do not disclose the fact that the lot or lots are on lease as aforesaid, or unless the collector shall have actual notice of such lease prior to the sale thereof." The city tax collector of Baltimore sold in March, 1891, for the non-payment of State and city taxes, the fee simple estate in a lot of ground on Druid Hill avenue, and the Mayor and City Council became the purchaser. The sale was reported to the Circuit Court of Baltimore City, and was ratified in May, 1892. In October following, the city, through and by its comptroller, sold the lot to Clarence M. Ellinger, to whom it was thereafter conveyed. When the sale was made by the collector, the lot was subject to a lease for ninety-nine years, renewable forever, which was owned by J. Henry Weber, and the reversion or fee was owned by the appellee, Whittington. The unpaid taxes were due by the owner of the leasehold estate, but the collector sold the whole fee without having first offered, or having

* Mr. Story was counsel for Ellinger.

attempted to sell, the leasehold as required by the section of the City Code to which reference has been made. There was no entry on the books of the collector showing that the lot was subject to a lease, and the single question involved in the case is whether, when the collector made the sale, he had *"actual notice"* of the existence of the lease. If he had, the sale was irregular. If it was irregular, the decree of the Circuit Court of Baltimore City restraining by injunction the Mayor and City Council and its grantee, Ellinger, from disturbing the possession of the owner of the reversion, must be affirmed.

It appears by the record that in 1883 proceedings were instituted in the Circuit Court of Baltimore City by Rebecca and Mary McKeen against J. Henry Weber for a sale of this same leasehold estate under a mortgage thereon, executed by Weber in 1881. Mr. T. Wallis Blakistone was appointed trustee to make the sale. He took possestion of the property, and collected the rents and profits, but owing to a depreciation in its value made no sale of it. In the meantime the ground rent was regularly paid to the appellee up to July, 1892, but the State and city taxes for the eight years beginning with 1882 remained unpaid. On the first day of December, 1890, Lewis N. Hopkins, city collector, filed a petition in the foreclosure proceedings representing that taxes for the years just mentioned were in arrear upon the property *"decreed to be sold."* The petition further stated that the collector was unable to enforce the collection of those taxes by reason of the pendency of the foreclosure proceedings, and it prayed that the trustee might be required to pay the taxes out of the rents theretofore collected from the property, or that the collector might "be allowed to proceed to collect said taxes by sale of the property in the ordinary way." This petition was signed by the late Mr. W. A. Hammond,

Mayor, &c., of Baltimore *vs.* Whittington.

"City Solicitor, *Attorney for Petitioner,*" and was sworn to by the deputy city collector. Subsequently, an order was passed requiring the trustee to pay the taxes within five days, out of the funds previously collected by him "as rents from the property decreed to be sold," and directing, upon his failure to do so, that the property be sold in the ordinary way by the collector. The trustee did fail to pay the taxes, and the collector made under authority of this order, the sale of March, 1891, already mentioned. It is upon these facts that the appellee relies to show that the collector had "actual notice" of the existence of the leasehold estate.

Notice is of two kinds,—actual and constructive. Actual notice may be either express or implied. If the one, it is established by direct evidence, if the other, by the proof of circumstances from which it is inferable as a fact. Constructive notice is, on the other hand, always a presumption of law. Express notice embraces not only knowledge, but also that which is communicated by direct information, either written or oral, from those who are cognizant of the fact communicated. *Wade on Notice, sec.* 6. Implied notice, which is equally actual notice, arises where the party to be charged is shown to have had knowledge of such facts and circumstances as would lead him, by the exercise of due diligence, to a knowledge of the principal fact. 16 *Am. & Eng. Enc. Law,* 790. Or, as defined by the Supreme Court of Missouri, in *Rhodes vs. Outcalt,* 48 *Mo.,* 370, "a notice is regarded in law as actual when the party sought to be affected by it knows of the particular fact, or is conscious of having the means of knowing it, although he may not employ the means in his possession for the purpose of gaining further information." It is simply circumstantial evidence from which notice may be inferred. It differs from constructive notice, with which it is frequently confounded, and which it greatly resem-

bles, in respect to the character of the inference upon which it rests; constructive notice being the creature of positive law, resting upon strictly *legal* presumptions which are not allowed to be controverted, 1 *Story's Eq. Jur.*, sec. 399; *Townsend vs. Little*, 109 *U. S.* 504, whilst implied notice arises from inference of *fact*. *Williamson vs. Brown*, 15 *N. Y.*, 354; *Wade on Notice*, sec. 8.

With constructive notice we are not now concerned, and it is not pretended that the city collector had express notice, or knowledge personally, of the existence of the leasehold estate. But he became a party to the equity proceeding, wherein a decree had been passed directing a sale of the leasehold interest. He did more. He asked, notwithstanding the decree had been long before signed and enrolled, that he be permitted to sell for the non-payment of taxes, under the summary process of distraint, the identical property previously decreed to be sold, and no other or different interest. And the property which had been thus previously decreed to be sold was not the fee simple, but only the leasehold interest in the lot in question. He obviously knew there was a proceeding pending in the Circuit Court of Baltimore City, having for its object the sale of *some* interest in the property. He knew, further, the equity proceeding interfered with the execution of his distraints, and he applied to the Court for leave to proceed, in spite of the decree, to sell the same property which had been decreed to be sold. We say he knew these things, and we say so not because the record shows that he was personally aware of them, as matters of actual knowledge, but because the deputy city collector and the collector's attorney, both of whom were his agents in this transaction, did have such knowledge—the one having sworn to the facts stated in the petition, and the other having signed the petition itself. So both the attorney and the deputy collector knew, or at least were

in possession of facts which would necessarily lead, upon the exercise of the slightest diligence, to a knowledge or notice, of the existence of the lease. They must therefore be regarded as knowing that which, with ordinary diligence, they might have known, or that which they were conscious of having the means of knowing. This result is not a legal presumption, but an inference of fact, and it seems to us an irresistible inference. It would be idle to say, that the collector was ignorant of facts relating to the title to property which he was about to sell for the non-payment of taxes, when his deputy acting for him and in his name, was in full possession of them; or that he did not know the things which his attorney was aware of in that particular proceeding respecting the state of the title. And it would be equally idle to say that the deputy, when he swore to the petition, and the attorney, when he signed it, filed it, and procured a Court's order upon it, were not apprised of the character of the estate previously decreed to be sold; or were not in a position where they were conscious of having the means of knowing precisely what property the decree affected. At all events, the exercise of ordinary diligence would most assuredly have informed both of these agents of the collector of every fact which the records in the equity case disclosed, and among those facts was the material and important one that the lot was subject to a lease for ninety-nine years, renewable forever. It is consequently a legitimate inference of fact that both of these representatives of the collector knew what the record in the foreclosure case disclosed as to there being a leasehold estate in Weber, and not a fee. And this was implied actual notice.

Notice to the attorney, as well as notice to the deputy, was notice to the collector, and was actual, and not merely constructive notice to him, for the principal is bound by and affected with notice to his agent; and he

Mayor, &c., of Baltimore *vs.* Whittington.

is equally bound by notice received by his attorney in the same transaction. *Astor vs. Wells,* 4 *Wheat.,* 466; *Reed's Appeal,* 34 *Pa. St.,* 209; *Houseman vs. Girard Mutual Building and Loan Association,* 81 *Pa. St.,* 256; *Smith vs. Ayer,* 101 *U. S.,* 320. If this were not so, then, in every case where notice is necessary, it might be avoided by simply employing an agent.

We are, for the reasons we have given, of opinion that the collector had, through the means we have indicated, such actual notice of the existence of the lease as to bring him within the proviso quoted from the City Code; and that he was, therefore, not authorized to sell the fee simple estate until he had first offered the leasehold for sale. It results, then, that the sale made by him was irregular, and the decree granting the injunction applied for by the appellee must be affirmed.

> *Decree affirmed, with costs in this*
> *Court and in the Court below.*

(Decided 16th November, 1893.)