ITALIAN SAVINGS BANK OF CITY OF NEW YORK v. LE GRANGE et al.

(Supreme Court, Appellate Division, Second Department. July 30, 1915.)

1. VENDOR AND PURCHASER ☞191—EXECUTORY CONTRACT—VENDEE'S RIGHT TO POSSESSION.

Under an executory contract for the purchase of land, the buyer has right of entry and immediate possession, being looked upon as the owner in equity, under the doctrine of equitable conversion, whereby the vendor becomes trustee of the legal title for the vendee, and the vendee of the unpaid purchase money for the vendor.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 393–395, 397; Dec. Dig. ☞191.]

2. VENDOR AND PURCHASER ☞232—POSSESSION—NOTICE.

One in the possession of land de facto and of right may impute knowledge of that possession to all who deal for any interest in the property; the fact of possession putting any person so dealing upon inquiry, the means of knowledge which such inquiry would afford being regarded as actual notice of the possessor's claims.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540–545, 548–562; Dec. Dig. ☞232.]

3. VENDOR AND PURCHASER ☞232—BONA FIDE PURCHASERS—NOTICE—"POSSESSION" OF VENDEE.

"Possession" under an executory contract of sale, which will entitle the buyer to charge persons dealing with the land with notice of his claim thereto, is taking control and appropriating the land so as to set thereon marks of ownership by acts not casual or for a temporary purpose, such as cultivating, or improving, or substantially inclosing the land, or, where not inclosed, using it for the occupant's supply of fuel or fencing timber.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540–545, 548–562; Dec. Dig. ☞232.

For other definitions, see Words and Phrases, First and Second Series, Possession.]

4. VENDOR AND PURCHASER ☞244—NOTICE BY POSSESSION OF EXECUTORY VENDEE.

If there is any difference in the degree and strictness of proof required of adverse possession and of possession by the executory purchaser of land whereby he seeks to charge others with notice of his claim, greater stringency may be required where, by the statute of limitations, possession may become the root of a hostile title, than where acts of occupancy merely serve as notice of an existing title validly obtained.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 609–611; Dec. Dig. ☞244.]

5. VENDOR AND PURCHASER ☞232—POSSESSION OF EXECUTORY VENDEE AS NOTICE—SUFFICIENCY.

Where purchasers of land under an executory contract of sale put up a wire fence on the two street sides, the inside boundaries having been fenced by adjacent neighbors, and one of them went on the premises nearly every day and the other was often there and filled in the lots, so as gradually to raise the grade, bringing stones thereon for a foundation of a future cellar, and planting vines, shrubs, and fruit trees, such possession of the buyers, kept up for seven years, was sufficient to charge those dealing with the land with notice of their claim thereto.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540–545, 548–562; Dec. Dig. ☞232.]

6. MORTGAGES ☞154—MORTGAGEE AS BONA FIDE PURCHASER—NOTICE.

Where lots owned by a land development company were not only mortgaged as distinct units, but the purpose and fact that such lots were for

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

separate disposal was brought home to the mortgagee by his covenant to release any lot from the mortgage lien upon payment of $100, such mortgagee was chargeable with notice of the mortgagor development company's practice to make sales of such lots to householders.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 344–353; Dec. Dig. &infin;154.]

7. VENDOR AND PURCHASER &infin;232—POSSESSION OF EXECUTORY VENDEE WORK-
ING NOTICE OF CLAIM—NECESSITY FOR RESIDENCE.

Notice of an unrecorded title under an executory contract of sale may be made out by occupation other than actual residence.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 540–545, 548–562; Dec. Dig. &infin;232.]

Appeal from Special Court, Westchester County.

Action by the Italian Savings Bank of the City of New York against William Le Grange and others. Judgment for defendants Campomenosi, and plaintiff appeals. Affirmed.

The Halley Land & Improvement Company, a domestic corporation, was engaged in developing and disposing of building lots in Harrison, Westchester county. Among its lands under development were two building lots, Nos. 259 and 260, situated at the corner of Halstead avenue and First street. On June 1, 1904, Joseph Campomenosi and wife, who carried on a small store in Harrison, contracted to buy these lots for $900. They paid $50 down, with an agreement to complete the payments by equal monthly installments. A contract was duly executed, by which the land company agreed on final payment to give a deed with warranty and full covenants for conveying the property, with a policy insuring the title, which contract, however, was not recorded. The purchasers, however, entered upon their new purchase, which lay in low and swampy ground, and began filling in the depressed parts, raising the grade approximately to that of the street. They put up fences and made other improvements. The vendees also paid the taxes, which were assessed in their names. Meantime they continued their payments until, in August, 1912, they had fully paid for these lots, when they received a full-covenant deed from the Halley Land & Improvement Company, which was recorded on August 29, 1912. But in July of the previous year, 1911, the Halley Land & Improvement Company apparently found it necessary to raise money, and requested a loan, the security for which was effected by means of first conveying its lots (including the two here in question) to an employé, the defendant William Le Grange, who executed a mortgage to one Gilbert to secure the sum of $10,000. The mortgage covered and enumerated in all about 120 lots, each described by its lot number upon maps in the county register's office. The usual mortgage bond executed by Mr. Le Grange carried this indorsement by the president of the Halley Company:

"In consideration of the loan of $10,000 to the Halley Land & Improvement Company at my request, I hereby guarantee punctual payment of the foregoing bond. Matilda Francolini."

This mortgage was recorded July 24, 1911. In September following Mr. Gilbert assigned this mortgage to plaintiff by a recorded assignment. The plaintiff also took an estoppel certificate from the Halley Company. When this mortgage was being foreclosed in August, 1913, the defendants Campomenosi interposed a counterclaim, asserting their equitable ownership under their executory purchase of June, 1904, with an averment that, since that time, they had been in full possession and had inclosed said lots with a fence, which plaintiff well knew prior to the assignment of its mortgage. They therefore asked a dismissal of the foreclosure complaint, with a cancellation of the mortgage, so far as it affected these two lots. Upon the plaintiff's reply to this counterclaim, the suit was severed as to defendants Campomenosi.

As to the other defendants, the suit proceeded to a deficiency judgment for $7,111.67. After a trial as to these respondents, the court at Special

Term sustained their equities arising from their possession of the lots, with the general knowledge of such ownership, and directed a cancellation of the mortgage so far as it related thereto, and adjudged that the plaintiff, together with the defendants, other than the Campomenosis, be barred from all lien on these two lots. From this judgment plaintiff has appealed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, RICH, and PUTNAM, JJ.

Robert W. Bernard, of New York City, for appellant.
Judson G. Wells, of New York City, for respondents.

PUTNAM, J. [1, 2] Under an executory contract of purchase of land, the buyer has a right of entry and immediate possession. In equity he is looked on as the owner, under the doctrine of equitable conversion, whereby "the vendor becomes the trustee of the legal title for the vendee, and the vendee the trustee of the vendor as to the unpaid purchase money." Moyer v. Hinman, 13 N. Y. 180, 188. It has long been accepted law that, when a man is of right and de facto in the possession of land, he is entitled to impute knowledge of that possession to all who deal for any interest in that property. His possession puts any person so dealing upon inquiry. When such inquiry becomes a duty, the means of knowledge which it affords are regarded as the equivalent of actual notice, since by failing to inquire such a purchaser or mortgagee is visited with the consequences of a knowledge of the title and existing rights of the occupant. Pendleton v. Fay, 2 Paige, 202; Trustees of Union College v. Wheeler, 61 N. Y. 88; Holmes v. Powell, 8 De Gex, M. & G. 572; Hughes v. United States, 4 Wall. 232, 18 L. Ed. 303; Phelan v. Brady, 119 N. Y. 587, 23 N. E. 1109, 8 L. R. A. 211; City Bank of Bayonne v. Hocke, unofficially reported in 153 N. Y. Supp. 731.

[3] What acts constitute such possession of town lots unbuilt upon, of the character here involved? Possession generally is taking control and appropriating, so as to set on the lands some mark of ownership, by acts not casual or for a temporary purpose. To enter lands to cut grass, to pasture the fields, to fell timber, may be trespasses, and therefore hardly suffice to show legal possession. Acts of adverse possession under a written instrument are where land has been usually cultivated or improved, or substantially inclosed; or, if not inclosed, has been used for the supply of fuel, or of fencing timber, either for purposes of husbandry or for the occupant's ordinary use. Code Civ. Proc. § 370.

[4] Appellant, however, contends that this adverse possession, which ripens into title in 20 years, is essentially different from the acts of a lot purchaser in possession as against a mortgagee. The acts of a purchaser in possession are such as evince a purpose of ownership. Even if such possession has recently begun, it may, to a buyer or incumbrancer, indicate the occupant's title. If there be any distinction in degree of strictness of proof, greater stringency may be required in the instance where, by the statute of limitations, possession is in the course of becoming the root of a hostile title, than where acts of occupancy merely serve as notice of an existing title already validly

obtained. The latter acts are merely such as apprise the public that the land has been appropriated and occupied.

[5] The respondents' acts here were: In 1906 or 1908, a wire fence was put up along the two street sides. The inner boundaries had been fenced by the adjacent neighbors. Along the street the respondents put up posts, sometimes pieces of iron pipe, with wire running all around. This fence was stated to be a foot and a half high. There were also sticks and pieces of branches used. Nearly every day Mrs. Campomenosi went on the premises. Her husband was also often seen working there. There was also a filling in of the lots, originally low and swampy, so as gradually to raise the grade. In 1906 stones were also brought on the lots for foundation of a future cellar. When some were removed by a contractor, one Luppinacci, Mrs. Campomenosi called for them, whereupon he put them back. Later shrubs were planted there, and apple and peach trees, with some small grape vines. These trees were testified to have been there three years, which, if counted from date of the trial, would extend back to 1911. In November, 1912, respondents contracted to build a house there, but this was subsequent to the mortgage in suit. All of this evidence stands uncontradicted.

It is a fair inference that in July, 1911, when Le Grange gave this mortgage, the mortgagee had constructive notice of the series of improvements, of the process of gradually filling the lots and grading them, fencing along the street lines, all of which was unmistakably to better the lands and to fit them for residence. The fencing seems to be quite as substantial as that in Barnes v. Light, 116 N. Y. 34, 22 N. E. 441. The larger foundation stones grouped for the coming cellar, with the planting of shrubs, vines, and small trees, were other marks of proprietary ownership. An assertion of ownership appeared in the demand for the stones, which Luppinacci respected, and caused the foundation stones to be replaced.

[6] Respondents' title, as distinguished from possession, was also manifested by the lots being always assessed in the names of respondents, who also paid the taxes. Such marks of occupation do not stand alone. The mortgage itself showed the name and business of a land development company, by the recital that the Halley Land & Improvement Company had requested the loan. The lots were not only mortgaged as distinct units, by lot numbers; but the purpose and fact that such lots are for separate disposal is brought home to the mortgagee by his covenant, upon the payment of $100, to release any lot from the mortgage lien. The mortgagee, therefore, is chargeable with notice of the practice of making sales of such lots to householders. Such a lot owner's progress in improvements carries a significance greater than like improvements in a field or in a forest remote from the passing view of the public. This possession, kept up for seven years, amounted to a notice to the mortgagee, so that he could not ignore these patent facts and claim to be a bona fide owner. In the words of Gibson, C. J.:

"It certainly evinces as much carelessness to purchase without having viewed the premises as it does to purchase without having searched the register." Woods v. Farmere, 7 Watts (Pa.) 382, 32 Am. Dec. 772.

See, also, Garbutt v. Mayo, 128 Ga. 269, 57 S. E. 495, 13 L. R. A. (N. S.) 58.

This meets also the appellant's point that such possession, to be available, must be inconsistent with the title of the mortgagor. It is not shown that the Halley Land & Improvement Company was itself engaged in grading or improving any such sunken lots. The absence of such testimony left in full force the inference by the mortgagee that it was the vendees who were thus improving under their purchase. The outward appearances, therefore, supported the exclusive possession of the respondents, which, it has been found, was well known in the community.

[7] Counsel urges that notice of an unrecorded title is not made out by any occupation, short of actual *residence*. This would amount to saying that inquiry is never a duty when buying lots that are unbuilt upon—a doctrine quite beyond support. The duty of inquiry seems specially to rest on one lending money to such a land development company, whose course of business in executory contracts of sale exposes the vendees to lose both land and improvements through the lien of such a mortgage; and the courts should not mitigate the enforcement of this duty of the lender as against innocent vendees.

A clerical error in the sixth finding of fact should be corrected. The plaintiff's assignor was not Le Grange, but Frederick N. Gilbert. The latter portion of this finding, as corrected and amended, should read:

"That at the time of giving the mortgage referred to in the complaint, and hereinafter described, the plaintiff's assignor, Frederick N. Gilbert, could readily have ascertained that the said lots were owned by the defendants Campomenosi under their contract with the Halley Land & Improvement Company, and that they were claiming ownership thereof by virtue of said contract, which ownership was manifested by an open, visible, and exclusive possession thereof, as set forth in the two preceding findings of fact, numbered fourth and fifth."

The twenty-first finding of fact should be stricken out as unnecessary.

The judgment is therefore affirmed, with costs. All concur.