IRVINGTON FEDERAL SAVINGS & LOAN
ASSOCIATION *v.* WEST, ET UX.

[No. 55, October Term, 1949.]

212

*Decided January 11, 1950.*

214

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON and HENDERSON, JJ.

*Charles G. Page,* with whom were *John T. Backman* and *White & Page* on the brief, for the appellant.

*W. Frank Every* and *William Bruce Oswald,* with whom was *J. Purdon Wright* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

This case is an appeal from a decree passed by the Circuit Court for Baltimore County, in Equity, where a claim under a contract of sale was declared a lien and given priority to a recorded mortgage executed by the General Erectors, Incorporated (herein called Erectors) to the appellant (herein called Irvington).

The facts out of which the case arose may be stated in narrative form as follows: Erectors was engaged in developing property, erecting houses on lots in developments and selling the houses and lots. It purchased a tract of land in Catonsville, fronting less than 400 feet

on Ingleside Avenue, which runs approximately north and south, extending westerly with an irregular depth of 599 feet on the south and 1004 feet on the north side to intersect Kent Avenue. Through this property drives or avenues were laid out, with lots fronting thereon, as well as on Ingleside Avenue. These lots were numbered. The tract as thus laid out is shown on a plat filed as an exhibit in the case.

On lot 1 there was a house built, and on lot 2 a house was built. These lots fronted on Ingleside Avenue. There was a large sign erected near these houses. "The heading is Ingleside Manor, then a choice of houses, new residential development of Cape Cod cottages by General Erectors, Incorporated, Builders, $9750 price, ground rent $90, corner lots $96 ground rent". "Agent on premises, Sunday 10 to 5." This advertisement was signed: "W. Burton Guy and Company, Incorporated, Sales Agents, 11 East Chase Street, Mulberry 4084". The witness quoted was describing the sign by reading the advertisement. The house on lot 2 was used as a sales office, and contained a table, miniature scale model of a house, a plat, and a sign on the window stating that an agent was on the premises and that the houses were open for inspection. Mr. Cordell, a salesman for Guy and Company, was in charge of this sales office.

Erectors acquired title to this property on August 12, 1947. It entered into possession thereof before title was acquired. The appellees became interested in this development on August 9, 1947. They saw Mr. Cordell at the sales office, selected lot 17 and a house to be built that was different in design from the usual Cape Cod house. On the same day appellees paid Mr. Cordell $100.00 on account of same. A contract was made by them on August 15, 1947. This contract was signed by Mr. Flutie, President of Erectors, and on August 30, 1947, appellees paid an additional sum of $900.00 on account, making a total payment on the contract of $1000.00. It was this sum that was preferred to the lien of the mortgage executed by Erectors to Irvington.

Plans and specifications were drawn for the house to be erected on lot 17 for the appellees by Erectors, and on sheet No. 1 of the plans appeared the following:

| Plan GE-2 | Residence of Mr. and Mrs. West<br>By General Erectors, Inc. |
| --- | --- |
| Drawn by E.F. | Alterations:<br>Approved date<br>1 of 3 |

On October 23, 1947, Erectors executed a construction mortgage to Irvington on certain lots therein set out (including lot 17) "as shown on the Plat of Ingleside Manor which Plat is recorded among the Land Records of Baltimore County in Plat Book No. 14, folio 28" to secure the sum of $44,100.00. This mortgage was recorded the next day. The appellees did not record their contract. The title to the property embraced in this mortgage was carefully examined by Mr. Backman, Irvington's attorney.

Mr. Helfrich gave the value of the lots, together with the contemplated improvements as shown by certain drawings. He was employed by Irvington for this purpose. There were three different kinds of houses to be erected on these lots, and Helfrich wrote three letters to Irvington to cover appraisements on the three different kinds of houses. On these appraisements by Mr. Helfrich, Irvington based the amount of the loan. The type of house desired by the appellees differed from the other type of houses, hence it was necessary for Helfrich to write Irvington dealing with this particular house. Mr. Backman delivered the plans and specifications to Mr. Johnson, Vice-President and Treasurer of appellant, who examined the same and did not notice the notation on the plans for the house to be erected on lot 17. Mr. Johnson delivered the plans to Mr. Helfrich.

This is the second construction mortgage made to ap-

pellant by Erectors on lots in this development. The first was dated October 9, 1947, and the same proceeding was gone through in that matter as in the mortgage here concerned. Mr. Helfrich made the appraisement, as in this case; he saw the office of the realtor in the house on Ingleside Avenue, and he saw the sign on the property. He said he was not concerned with the office or sign; he was there to look at the lots to be mortgaged; he saw no evidence of building on these lots; there was, in fact, no evidence of any building. He stated if he had seen anything that evidenced the lots might have been sold, he would have called the same to the attention of Irvington. He must have made a detailed examination of the plans and specifications for the house to be erected on lot 17, but he did not recall the name of "West" on the plans; that he was not interested in who the house was being built for, and he paid no attention to the legend on the plan.

Both Mr. Backman and Mr. Johnson saw the plans for the house to be erected on lot 17, but they did not examine them, except to see the general type of construction contemplated. Neither noticed the name "West" on the plans until after these proceedings were instituted.

The appellees contend (successfully in the lower court) that the agents of Irvington saw the sign on the property, and the office of the realtor, and it was their duty to inquire at the office if any lots had been sold or contracted to be sold, which duty they did not fulfill; that ordinary care requires them to examine the plans for the house to be erected on lot 17, and if such care had been exercised they would have seen the notation on the plans; that with such information they, by the exercise of due care, would have discovered the situation of the appellees, and the wrong done them by Erectors would not have occurred; that it was the duty of Irvington to look carefully through its file in this matter, and if it had done so an inquiry would have disclosed the appellees' situation. In short, the appellees contend that Irvington is chargeable with notice of the situation at the time the

mortgage was consummated. This contention is vigorously denied by appellant.

The only question presented in this case is whether, at the time of the settlement of the mortgage in question Irvington was in possession of actual facts that would impute to it the ultimate fact, namely, the appellees' contract with Erectors. If the actual facts in hand were such that the ignoring of them would be tantamount to closing one's eyes to the situation and refusing to look, then Irvington would be charged not only with the facts in hand but with the knowledge of the situation of the appellees, as actual facts. Failure to look around and see, by Irvington, under such circumstances would be tantamount to fraud on its part.

"Notice is of two kinds,—actual and constructive. Actual notice may be either express or implied. If the one, it is established by direct evidence, if the other, by the proof of circumstances from which it is inferable as a fact. Constructive notice is, on the other hand, always a presumption of law. Express notice embraces not only knowledge, but also that which is communicated by direct information, either written or oral, from those who are cognizant of the fact communicated. Wade on Notice, § 6. Implied notice, which is equally actual notice, arises where the party to be charged is shown to have had knowledge of such facts and circumstances as would lead him, by the exercise of due diligence, to a knowledge of the principal fact. 16 Am. & Eng. Ency. of Law, 790. Or, as defined by the supreme court of Missouri in *Rhodes v. Outcalt,* 48 Mo. [367], 370, 'a notice is regarded in law as actual when the party sought to be affected by it knows of the particular fact, or is conscious of having the means of knowing it, although he may not employ the means in his possession for the purpose of gaining further information.' It is simply circumstantial evidence from which notice may be inferred. It differs from constructive notice, with which it is frequently confounded, and which it greatly resembles, in respect to the character of the inference upon

which it rests; constructive notice being the creature of positive law, resting upon strictly legal presumptions which are not allowed to be controverted, (1 *Story's Eq. Jur.* § 399; *Townsend v. Little,* 109 U. S. 504, 3 S. Ct. 357) [27 L. Ed. 1012], whilst implied notice arises from inference of fact, (*Williamson v. Brown,* 15 N. Y. 354; *Wade on Notice,* § (8.)" *Baltimore v. Whittington,* 78 Md. 231, 235-236, 27 A. 984, 985.

In *Mishawaka-St. Joseph Loan & T. Co. v. Neu,* 209 Ind. 433, 196 N. E. 85, 90, 105 A. L. R. 881, at page 887, the law is clearly examined. It was there said: "In equity, means of knowledge, with the duty of using them, are equal to knowledge itself. *Cordova v. Hood,* 1872, 17 Wall. 1, 21 L. Ed. 587." See: Hunter v. Baker, 154 Md. 307-331, 141 A. 368; *Liggett Co. v. Rose,* 152 Md. 146-159, 136 A. 651.

"Upon the question of notice this court said, in Winchester's Case [Winchester v. Baltimore & S. R. Co.], 4 Md. 231, that 'actual knowledge must be shown by proof, or at least such circumstances must be proved as would have been sufficient to put the party on inquiry.' See also Price v. McDonald, 1 Md. 403 [54 Am. Dec. 657]. Applying this principle to the present case, we have not been able to discover any sufficient ground for denying to the appellee the priority claimed by it. *The case must be so clear as to satisfy the mind, that the allowance of the claim would be a fraud on the party setting up the first deed.* In *Wyatt v. Barwell,* 19 Ves. 435, it is said: 'A registered deed stands upon a different footing from an ordinary conveyance. It has been much doubted, whether courts ought ever to have suffered the question of notice to be agitated as against a party who has duly registered his conveyance; but they have said, we cannot permit fraud to prevail, and it shall only be in cases where the notice is so clearly proved as to make it fraudulent in the purchaser to take and register a conveyance in prejudice to the known title of another, that we will suffer the registered deed to be affected.' And the same principle had been recognized

by Lord Hardwicke in *Hine v. Dodd,* 2 Atk. 235, who said, 'though there are strong circumstances of notice before the execution of the mortgage, yet, upon mere suspicion only, I will not overturn a positive law;' but, he added, 'apparent fraud, or clear and undoubted notice, would be a proper ground for relief.' " (Italics supplied.) *General Ins. Co. of Maryland v. U. S. Ins. Co.,* 10 Md. 517, at pages 524-525, 69 Am. Dec. 174.

"The rule extends to gross negligence, which is tantamount in its effects to fraud (see sec. 732). An equity otherwise equal, or even prior in point of time, may, through the gross laches of its holder, be postponed to a subsequent interest which another person was enabled to acquire by means of such negligence. To admit the operation of this rule in either of its phases, and to displace the otherwise natural order of priority, there must be intentional deceit,—that is, intentional misrepresentation or suppression of the truth,—or else gross negligence. In the one case, the party possessing the claim which it is sought to postpone must both know of his own right and also of the other person's intention to acquire, or of his acts in acquiring, an interest in the same subject-matter. *In the other case there must be gross laches, for mere carelessness or ordinary negligence will not suffice according to the weight of modern authority."* (Italics supplied.) Pomeroy's Equity Jurisprudence, Fifth Edition, Vol. 2, sec. 687.

. It was not contended that Irvington practiced fraud in this transaction. We are not dealing with a case where there was actual knowledge and hence a perpetration of a fraud. What is presented here is whether there was implied actual knowledge, that is to say, that facts were known by Irvington and not pursued by it, which resulted in its failure to discover the appellees' position. This would be tantamount to the suppression of the truth.

This mortgage was recorded in accordance with Article 21, section 14, Annotated Code 1947 Supplement, and, as we have said, was constructive notice to all persons dealing with the land which it embraced. The mortgage

was in the form prescribed by law, duly signed and acknowledged. A mortgagee is treated as a purchaser, and "where title is perfect on its face and no known circumstances exist to impeach it, or put a purchaser on inquiry, one who buys *bona fide* and for value occupies one of the most highly favored positions in the law." *Seldner v. McCreery,* 75 Md. 287, 296, 23 A. 641, 643; *Economy Sav. Bank v. Gordon,* 90 Md. at page 486, 504, 45 A. 176, 48 L. R. A. 63.

A junior mortgagee guilty of *mala fides* in the obtention and registration of a junior mortgage will be postponed to a senior mortgagee. See: *Willard v. Ramsburg,* 22 Md. 206; *Clabaugh et al. v. Byerly,* 7 Gill 354, 361, 48 Am. Dec. 575; *U. S. Ins. Co. v. Shriver et al,* 3 Md. Ch. 381.

We have carefully considered the cases cited on the appellees' brief and we think that those cases, on the facts, differ from the facts in the case at bar and are not satisfactory precedents. Irvington had neither constructive nor actual notice of the appellees' contract. The sign, and the office of the realtor on the property, which were seen by Irvington's agents who went to the property to inspect the lots in question, did not require those agents to visit the office and inquire of Mr. Cordell, who was in control thereof, if any of the lots in which they were then interested had been sold or contracted to be sold. The lots inspected by these agents were vacant lots. No sign of building on the same was evident. The cases of *Italian Savings Bank of City of New York v. LeGrange,* 169 App. Div. 120, 154 N. Y. S. 814, 815, and *Kunze v. Rosenzweig,* 186 App. Div. 866, 174 N. Y. S. 664, are strongly urged by appellees as being like this case on the facts, and should apply here. The facts in this case are entirely different from the facts presented in those cases. There was no sign, no evidence of breaking ground for a foundation, or other facts as disclosed in those cases. Helfrich, as well as other officers and agents of Irvington, was interested in what the value of the proposed house shown by the plans and

specifications would represent when completed. They were not particularly interested in the persons for whom the houses would be built. It is true that on the plans and specifications for the house to be built on lot 17 the names of Mr. and Mrs. West appear, and when the mortgage was put through this notation was not seen. From these general facts we are asked to impute to Irvington actual knowledge of the appellees' contract at the time it made this mortgage to Erectors. The appellees were required by law to establish their case by testimony so clear as to satisfy the mind that the allowance of Irvington's mortgage in full would be a fraud on its part.

We cannot say from the evidence in this case that Irvington's conduct can be characterized as gross laches. Proof of mere carelessness or ordinary negligence will not suffice to enable the appellees to prevail, according to the weight of modern authority. Even if it could be said that Irvington was careless, and its action in the ordinary sense would constitute negligence, the appellees would not be entitled to have the payment which they made under their contract with Erectors declared a lien superior to Irvington's Mortgage. The proof is wanting in that clarity "to satisfy the mind, that the allowance of the claim would be a fraud" upon the appellees. *Gen. Ins. Co. v. U. S. Ins. Co., supra.* The decree will be reversed and the bill dismissed.

> *Decree reversed, bill dismissed, with costs to appellant.*