[No. 21374. *En Banc.* December 5, 1929.]

WHOLE GRAIN WHEAT DISTRIBUTING COMPANY, *Respondent,* v. BON MARCHE, *Appellant.*[1]

[1]Reported in 282 Pac. 914.

*Preston, Thorgrimson & Turner,* for appellant.

FRENCH, J.—The Whole Grain Wheat Company is a corporation organized under the laws of the state of Arizona. Its place of business is in the city of Chicago in the state of Illinois. It is engaged in manufacturing and selling to distributors a so-called food product which it designates as "Whole Grain Wheat." The product is wheat in its natural state, cooked in water with a small quantity of sea-salt added. As described by the president of the corporation,

"It is natural wheat that has been prepared and cooked without oxidation, so as to produce in the user the same biological effect as though the wheat were raw and uncooked."

The product is sold in hermetically sealed tin cans capable of holding eleven ounces in weight of the product. The can is covered with a paper label, on which are printed directions for the use of the product and a statement of the benefits derived from its use. The conspicuous part of the label are the words "Whole Grain Wheat." These are printed in white letters on a blue background; the word "Grain" being immediately under the word "Whole," and the word "Wheat" immediately under the word "Grain."

The record discloses that the phrase "Whole Grain Wheat" has not been copyrighted by the manufacturer as a trade name, and it seems to indicate that the process used in the manufacture of the product has not been patented, although the can introduced in evidence as an exhibit bears on its label the words, "process patented Jan. 6, 1920."

The respondent, Whole Grain Wheat Distributing Co., is a corporation organized under the laws of the state of Washington, and is the general distributor of the product for the western part of the state of Wash-

ington. The Arizona corporation has two other general distributors of its product within the state, one located at the city of Yakima and the other at the city of Spokane. Shipments to these distributors are made in carload lots.

The Dr. Brent's Nature Food Company is also a corporation, with its principal place of business at the city of Portland in the state of Oregon. It manufactures and sells a product called "Honeyed Whole Wheat." The president of the company described the composition of the product and its process of manufacture in the following words:

"It is composed of hard winter wheat, ripe red wheat, placed in the can, with water, salt and an amount of honey, vacuumed and still raw, and then cooked by a slow cooking process."

He further testified that his product did not differ from the product of the Arizona company in process of manufacture or in content, except his contained honey while the other did not. The product is sold in cans of the same size and shape as that of the Arizona company. The can, like the can of the Arizona company, is covered with a paper label on which is printed directions for the use of the product and a statement of the beneficial effects arising from its use. The conspicuous part of the label printed on the wrapper are the words "Whole Wheat." These words are printed in white letters on a red background; the word "Wheat" appearing under the word "Whole." Above the word "Whole" is printed in a less conspicuous and a different style of type the word "Honeyed." Looking at the cans from a short distance away, in the manner they would be viewed on the shelf of a grocer, the printing visible on the one are the words "Whole Grain Wheat," and on the other, "Whole Wheat."

The product of the Whole Grain Wheat Company was first placed on the market in the year 1917, and beginning with the year 1924, considerable quantities of the product have been sold in the state of Washington under its labeled name.

The appellant, Bon Marche, is a corporation, conducting a department store in the city of Seattle. On March 10, 1927, it caused to be inserted in a daily paper published in that city the following advertisement:

"HONEYED WHOLE GRAIN WHEAT
"Dr. Brent's Health Food
"Cooked Ready to Eat

"Dr. Inns V. Brent, dietitian and food expert, will be in the food department the remainder of the week to explain the importance of using *whole grain wheat.* Cooked in the can without oxidation.

"11-Ounce Cans, 2 for 25c
"One Dozen Cans $1.50
"Main Floor, The Bon Marche."

On the left side of the body of the advertisement, is a picture of Dr. Brent, and on the right side a picture of the can. The picture seems to be a copy of a miniature photograph of the can taken from what might be called a front view. The printing thereon capable of being read with the naked eye are the words "Whole Wheat." Dr. Brent was at the place of business of the appellant some days following the date of the advertisement, and explained to inquirers visiting the store the nature of the product. There were also distributed to the patrons of the store copies of a circular prepared by Dr. Brent, which described the product; the conspicuous words describing the product, printed in capital letters, were these:

"HONEYED WHOLE WHEAT
"THE WHOLE GRAIN WHEAT IN A CAN
"COOKED READY TO EAT."

When the advertisement and circular appeared, the

respondent corporation complained to the appellant of the use of the name, contending that its use was unfair competition and an infringement upon the respondent's trade name, and shortly thereafter began the present action to restrain the appellant from advertising and selling the Dr. Brent product under the name of "Whole Grain Wheat" or "Whole Wheat."

After issue had been joined on the allegations of the complaint, the cause was tried as one of equitable cognizance. The trial court found as fact that the words "Whole Grain Wheat" were not a mere descriptive term, but an original combination of words which could be appropriated as a trade name to the exclusion of its use by others. It found that the term "Whole Wheat" was not so far imitative of the term "Whole Grain Wheat" as to be an infringement on it; holding, however, upon the facts shown, that the appellant was advertising and selling the product of Dr. Brent under the name of the product of the respondent. The operative words of the decree entered are the following:

"(1)   That the defendant, The Bon Marche, be and it is hereby perpetually enjoined from selling any product as a whole grain wheat product, other than the product produced by the Whole Grain Wheat Company and distributed in the city of Seattle and vicinity by the plaintiff.

"(2)   That said defendant is likewise perpetually enjoined from representing to its customers or prospective customers that any product sold by it is, in fact, a whole grain wheat product unless such product be that produced by the said Whole Grain Wheat Company.

"(3)   That said defendant be perpetually enjoined from making said representations either orally or in writing or in printing.

"(4)   That the plaintiff do have and recover of and from the defendant as damages herein the sum of Fourteen and 18/100 Dollars ($14.18)."

The respondent has not appeared in this court, and we have before us only the contentions of the appellant and its arguments in support thereof. These contentions are three in number, and are stated in the language of its counsel as follows:

"(I)   The words 'whole grain wheat' are descriptive and therefore not susceptible of protection as a common law trade mark.

"(II)   The words 'whole grain wheat' have not acquired a secondary meaning.

"(III)   Assuming that the words 'whole grain wheat' have acquired a secondary meaning, the appellant is not guilty of unfair competition."

■  The rule that a word or combination of words merely descriptive in character cannot be wholly appropriated to the exclusion of others who are manufacturing a like product, is well settled.  26 R. C. L., p. 849.  We think it is plain that the words here used, "whole grain wheat," are descriptive only.  In fact it was admitted by the president of respondent company, while he was testifying, that he could think of no other or better description of the product, and the same admission and statement was made by other officers and members of the company.  As illustrative of the fact that words which are purely descriptive of the product can not be copyrighted, many cases are cited in the note given in R. C. L., *supra,* and all of these cases which we have examined fully support the text.

■  That the words "whole grain wheat" have not acquired a secondary meaning, we think clearly appears from the testimony of respondent's own witnesses.  When purchasing, they ask for "whole grain wheat."  Their testimony shows conclusively that most of these witnesses at least knew that they were not purchasing respondent's product; that they were interested only in getting whole grains of wheat cooked and prepared for food much the same as customers

many times ask for "rolled oats" without having any particular idea or caring who manufactured the rolled oats sold to them.

But, in any event,. we think it clearly appears that the appellant is not guilty. of unfair competition. The rule on this subject is well stated in the case of *Vacuum Oil Co. v. Climax Refining Co.,* 120 Fed. 254, as follows:

"That a descriptive word or sign or symbol, descriptive from popular use in a descriptive sense, may acquire a secondary significance denoting origin or ownership, is true. But this secondary significance is not protected as a trade-mark; for a descriptive word is not the subject of a valid trade-mark; the only office of a trade-mark being to indicate origin or ownership. When a descriptive or geographical word or symbol comes by adoption to have a secondary meaning denoting origin, its use in this secondary sense may be restrained, if it amounts to unfair competition. In such case, if the use of it by another be for the purpose of palming off the goods of one as and for the goods of another, a court of equity will interfere for the purpose of preventing such a fraud. But this kind of relief depends upon the facts of each case, and does not at all come under the rules applicable to the infringement of a trade-mark."

Or, as stated in 26 R. C. L., p. 875:

"Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor. The rule is generally recognized that no one shall by imitation or unfair device induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or merchandise. Thus the cases

are in accord in holding that it constitutes unfair competition to use a rival's bottle, tank, or package for the sale of a competing product, where the purpose and effect of such use are to enable the producer or retailer to pass off the user's product as the product of the manufacturer originally using the tank, bottle, or container.''

Bearing in mind that the words in large type on the cans containing respondent's product are ''Whole Grain Wheat,'' and that the words on the appellant's product are ''Honeyed Whole Wheat;'' that the cans are alike in but one particular, and that is the size, and this the same standard size in which dozens of different products are every day vended from the grocery stores of every community; that the labels are different; that the printing contained on the cans is entirely different, and when it is remembered that, as was stated in *Warner & Co. v. Lilly & Co.*, 265 U. S. 526,

''The use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product,'' we are unable to find any unfair competition or any competition whatsoever excepting that which is perfectly lawful and legitimate.

Reversed with instructions to dismiss.

MITCHELL, C. J., PARKER, TOLMAN, HOLCOMB, MILLARD, and MAIN, JJ., concur.

BEALS, J. (dissenting)—While, in my opinion, the decree entered in this action is too broad in its scope and should be modified, I believe that respondent is entitled to some relief and that the action should not be dismissed. I therefore dissent from the conclusion reached by the majority.