## CAIGAN et al. v. PLIBRICO JOINTLESS FIREBRICK CO. (two cases).
### Nos. 2936, 2963.

Circuit Court of Appeals, First Circuit
Dec. 19, 1934.

Israel Caigan, for appellants.

John M. Raymond, of Boston, Mass. (Palmer, Dodge, Barstow, Wilkins & Davis, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and ANDERSON Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from a decree of the District Court of Massachusetts on a cross-bill in equity. A bill in equity was brought by the Plibrico Jointless Firebrick Company, which will hereinafter be referred to as the Plibrico Company or the plaintiff, against Israel Caigan and the Boiler Furnace Construction & Repair Corporation, a corporation organized by the defendant Caigan.

The defendants answered to the plaintiff's bill and included in their answer a cross-bill.

The District Court in a memorandum decision sustained the plaintiff's bill and ordered that the defendants' cross-bill be dismissed with costs; but through inadvertence no decree was entered dismissing the cross-bill. Caigan appealed from the decree of the District Court and assumed it embraced the dismissal of his cross-bill.

This court reversed the decree of the District Court sustaining the plaintiff's bill (65 F.(2d) 849), and remanded the case to the District Court for further proceedings, and directed that the defendants recover costs in both courts.

Later, a decree was filed in the District Court in accordance with its memorandum decision, dismissing the defendants' cross-bill with costs, from which decree the defendants have again appealed, and it is their appeal from this decree which is now before this court.

The only allegations of the cross-bill and assignments of error that require consideration are the assignments: That the District

Court erred in not finding that the plaintiff maliciously interfered with the telephone service of the defendants, and that this malicious interference resulted in great damage to the defendants; that the District Court erred in not finding that the plaintiff moved into an office previously occupied by the defendants and maliciously used a name similar to that of the Boiler Furnace Construction & Repair Corporation, to the damage of the defendants; that the District Court erred in not finding that the plaintiff submitted bids and accepted contracts in competition with the defendants based on ruinous prices to force the defendants out of business and maintain a monopoly; that the District Court erred in not finding that the plaintiff made slanderous and libelous statements concerning the defendant Caigan; that the District Court erred in not finding that the plaintiff had maliciously caused a customer of the defendant Caigan to break a contract which had already been entered into.

█ It is to be noted at the outset that the District Court found all the facts against the defendants, and his findings will be accepted by this court, unless clearly wrong.

█ The assignment that the District Court erred in not finding that the plaintiff maliciously interfered with the telephone service, to his damage, is obviously without support when the facts are analyzed.

The Plibrico Company is a corporation organized under the laws of Illinois with headquarters in Chicago. Its business is the manufacture and supplying of plastic fire brick material under the trade-name of Plibrico for repairing furnace walls. In 1920 it entered into an agreement with the defendant Caigan to act as the New England agent for and distributor of this material. Caigan, during his agency, rented an office at 110 State street in Boston, where he had a telephone installed and listed in the directory under the name of the Caigan Engineering Equipment Company and the Plibrico Jointless Firebrick Company, and under the same number.

In July, 1925, Caigan moved to a new office on Tyler street in Boston, but left an order with the telephone company to transfer all calls for his old number at 110 State street to his new telephone number on Tyler street. There could be no objection to that, as Caigan still represented the plaintiff as agent for its product.

In October, 1925, a Mr. Grant came to Boston to act as distributing agent for the plaintiff company, and the connection of Caigan, as representative of the plaintiff, was terminated around the first of the following November. Grant began the business of representing the plaintiff about the middle of November, and took the offices at 110 State street formerly occupied by Caigan, for the reason, as he frankly said, that he thought people who wanted Plibrico were accustomed to come there. He arranged to have a telephone installed for his use, and, as he could not get the Plibrico Company listed in the telephone directory under a new number until a new directory was issued, asked the telephone company if he could have assigned to him the old number used by Caigan at 110 State street, not knowing at the time of Caigan's arrangement that all calls for that number were to be transferred to his new number on Tyler street. As a result, Grant received no telephone calls for nearly six weeks without learning the reason, until an engineer came to his office and informed him that in calling that number he got the Caigan Engineering Equipment Company. This Grant verified, and upon calling at the telephone exchange in Boston, first learned the reason. He then asked the telephone company if they would not arrange for the operator, when the number assigned to him was called, to inquire whether it was the Caigan Engineering Equipment Company or the Plibrico Company which the party wanted.

There is no evidence in the case that this resulted in any damage to the defendants. Caigan's connection with the Plibrico Company having been severed, it appeared to be a perfectly reasonable request and evidently was so considered by the telephone company. Nor is there any evidence that it was done by Grant with any ulterior motive. Surely any good will Caigan had built up in plastic fire brick under the name of Plibrico Jointless Firebrick Company was not superior to the right of the plaintiff to supply any person inquiring for Plibrico, after Caigan's connection with the Plibrico Company had been severed. There is no merit in this assignment.

█ As to the assignment that the District Court erred in failing to sustain the allegation that the plaintiff moved into an office previously occupied by the defendants and used a name similar to that used by the defendants, the District Court was clearly right in refusing to sustain the allegation to that effect. The uncontradicted testimony was that Grant rented the office on State street and started to build up a busi-

ness of repairing boiler furnaces, entirely independent of the plaintiff, and under the name of the Boiler Brick Repair Company. The business of the plaintiff was selling Plibrico, not repair or construction work. Before adopting the name, Grant took the precaution of inquiring at the office of the secretary of state at the State House, to see if any one else was using that or a similar name, and was informed that there was not. He knew that the defendants were using the name of the Boiler Furnace Construction & Repair Corporation, but there was no evidence to warrant a finding that he selected the name of the Boiler Brick Repair Company with any idea of interfering with, or that it did interfere with, the business of the defendants; and, upon learning that the defendants objected to his using the name of the Boiler Brick Repair Company, he immediately ceased to use it.

■ The assignment that the plaintiff submitted bids and took contracts at ruinous prices for the purpose of driving the defendants out of business and to obtain a monopoly is also without merit. The defendants apparently cited three isolated cases in the years 1925, 1926, and 1927, in which they alleged the plaintiff greatly underbid them. There was no evidence to show that the bids, if by the plaintiff, were upon the same basis as those of the defendants, or that the bids alleged to have been submitted by the plaintiff were not submitted by Grant in connection with his independent business, or that they were not a case of misunderstanding as to the nature and extent of the work to be done. To pursue such a course as the defendants allege, if persisted in, would be ruinous to the plaintiff rather than the defendants.

■ As to the assignment that the District Court erred in not finding that the plaintiff made slanderous and libelous statements about the defendants, the District Court found that this allegation was not sustained. Information came to the plaintiff that Caigan was using methods in obtaining business which it deemed unfair. It appealed to an organization in Boston known as the Better Business Bureau, which apparently is an organization to maintain, by investigating complaints of competitors, better business relations and methods of conducting business.

The District Court evidently found that the complaint by the plaintiff was not without some basis.

The assignment that the District Court erred in not finding that the plaintiff caused a customer of the defendants to break a contract is without merit. The facts testified to by the defendants utterly failed to show that there was any substantial support for this allegation, and it cannot be said that the District Court was clearly wrong in rejecting this contention.

■ Having found that the assignments above enumerated were without merit, it in effect disposes also of the others as equally lacking in merit. The allegations of both the bill and the cross-bill consist largely in criminations and recriminations, which proved to have little, if even colorable, support in the evidence, and, at least, are no longer live issues warranting a permanent injunction in behalf of either. This court has already found that there was no occasion for a permanent injunction on behalf of the plaintiff, and its bill has been dismissed with costs. We think it is equally clear that the protection of defendants' rights does not require the issuing of the permanent injunction prayed for against the plaintiff.

■ Caigan brings another appeal, which may be briefly disposed of. In the original bill by the Plibrico Company, filed on July 22, 1929, a prayer for a preliminary injunction was heard and granted on July 29, 1929, in the District Court, by Judge Lowell, but without requiring the plaintiff to file a bond, as required by the statute, U. S. Code, title 28, § 382 (28 USCA § 382). This inadvertent error was brought to the attention of the court on June 7, 1934, after the decree had been entered on our mandate dismissing the original bill, when Caigan and the "Boiler Furnace Construction and Repair Company moved that the plaintiff be ordered to file forthwith a bond as of July 30, 1929, to comply with section 382 U. S. Code." This motion was denied. Caigan et al. appealed. The plaintiff moves to dismiss for lack of jurisdiction. This motion must be allowed.

Had the question been properly saved at the time the preliminary injunction was granted, it could have been raised on an appeal taken within thirty days from the interlocutory decree for an injunction, or on the appeal from the final decree granting the prayer of the original bill. But the question was not saved or raised in either of these ways. Had it been so saved and raised, it would seem now to be moot.

In No. 2936: The decree of the District Court dismissing the defendants' cross-bill is affirmed, with costs in both courts.

In No. 2963: The appeal is dismissed for want of jurisdiction; no costs.

ANDERSON, Circuit Judge (dissenting).

The action of plaintiff in causing all telephone calls to the Plibrico Company not to be transferred to Caigan's new telephone in the Beach Exchange seems to me plainly unfair competition. This act must be construed in the light of the fact that plaintiff had hired Caigan's old office and got his old telephone number.

At this time, Caigan and the Plibrico Company were in sharp competition in the business of furnishing this common material. There is no evidence of any superiority in plaintiff's output. The plaintiff's rights were limited to its trade-mark; but "there is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed." United Drug Co. v. Rectanus Co., 248 U. S. 90, 39 S. Ct. 48, 50, 63 L. Ed. 141. The business to which this trade-mark was appurtenant had been carried on for five and one-half years by Caigan at his office at 110 State street. The good will thus created accrued in part to Caigan. This was the unanimous holding of this court in 65 F.(2d) 849, 851, 852. The majority opinion is clearly inconsistent with the former holding; in effect it overrules it. Practically my colleagues now treat the plaintiff's trade-mark as the equivalent of a patent—the same error into which the court below fell. United Drug Co. v. Rectanus Co., supra. The telephones both in the Main and Beach exchanges were paid for by him. He clearly was entitled to full knowledge of all telephone calls, whether for the Plibrico Company, or any of the other concerns listed by him. Such calls might likely come from customers who had had satisfactory previous dealings with Caigan as purveyor of Plibrico, and who would perhaps prefer to continue relations with him rather than to deal with a new and unknown man then representing Plibrico. A call for Plibrico did not necessarily mean a fixed purpose to get Plibrico; it may have meant only that Caigan's office was known as a place where need for this sort of product could be met.

Caigan's rights included the opportunity to persuade a possible customer that his substitute material would serve the customer's purpose better or at least as well as Plibrico. The action of the plaintiff in preventing his having any knowledge of calls for Plibrico deprived him of that right. It gave to the Plibrico Company an exclusive chance on all calls for Plibrico. It thus limited the proper scope of the competition which then prevailed between Caigan and the Plibrico Company. The plaintiff's proper course would have been to arrange with the telephone company to give it the name and address of the concern making the call for Plibrico, and not to prevent the call from being transferred to Caigan's new address in the Beach exchange. Then both plaintiff and defendant would have had a fair and equal chance to obtain the trade of the calling customer. Probably the plaintiff thus obtained trade which might otherwise have gone to Caigan.

There are other assignments of error which seem to me to have merit, but I refrain from discussing them.